# EXHIBIT 9



2009122200179 Bk:29162 Pg:463
12/22/2009 12:00 AMD Pg 1/2

**(SEAL)**

## COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT
## LAND COURT DEPARTMENT

ESSEX ss.                                                09 MISC 405227 (KCL)

|  |  |
|---|---|
| HSBC BANK USA, N.A., as indenture trustee of the Fieldstone Mortgage Investment Trust, Series 2005-2, | ) )· ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| DAVID MARRON, ROBIN SOROKO MARRON, and MORTGAGE ELECTRONIC SYSTEMS, INC. as nominee for Fieldstone Mortgage Co., | ) ) ) ) ) |
| Defendants. | ) ) ) |

### AMENDED JUDGMENT

By agreement of the parties, the December 8, 2009 Judgment in this case is amended in the following respects. The remainder of the Judgment remains in full force and effect.

- The confirmatory mortgage to be signed by David Marron and Robin Soroko Marron, or signed for them if they fail timely to sign it themselves, shall name Mortgage Electronic Registration Systems, Inc., as nominee for Fieldstone Mortgage Company, as the mortgagee.

- The $10,000 to be paid by plaintiff pursuant to the Judgment shall be in the form of a check payable to Robert Graham, Esq. as attorney for David Marron and Robin Soroko Marron. Attorney Graham shall immediately deposit that check in his client funds account.

REBECCA A. PETERSEN
BERNKOPF GOODMAN LLP
125 SUMMER STREET
BOSTON, MA 02110-1621

1

- As soon as the funds from that check are available in his client funds account, Attorney

  Graham shall write two checks: (1) the first, in the amount of $7,000, made payable to

  David Marron and Robin Soroko Marron, which he shall immediately make available for

  pick-up by the Marrons or, if they so instruct him in writing, by mailing it to them by

  certified mail, return receipt requested, at the address they instruct him, and (2) the

  second, in the amount of $3,000, made payable to Family Law Associates, which shall

  resolve its claim for attorneys' fees and expenses fully and finally.

SO ORDERED.

By the court (Long, J.)

Attest:

_____

Deborah J. Patterson, Recorder

Dated:  10 December 2009

A TRUE COPY
ATTEST:

Deborah J. Patterson

RECORDER

2

# EXHIBIT 10



RETURN TO:
FIELDSTONE MORTGAGE COMPANY
11000 BROKEN LAND PKWY, #600
COLUMBIA, MD 21044

## MORTGAGE   MIN 100052630874877722

THIS MORTGAGE is made this   29th   day of   July   2005 between the Mortgagor,

ROBIN SOROKO MARRON, ,

(herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026 tel. (888) 679-MERS.

FIELDSTONE MORTGAGE COMPANY                                , ("Lender") is organized and existing under the laws of   MARYLAND                      , and has an address of
11000 BROKEN LAND PKWY, #600, COLUMBIA, MD 21044

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $   79,000.00   , which indebtedness is evidenced by Borrower's note dated   July 29, 2005   and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on   August 1, 2020   ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of   Essex
State of Massachusetts:

All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

which has the address of   25 MEARS FARM ROAD   [Street]
HAVERHILL   [City], Massachusetts 01830   [Zip Code] (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

---

MASSACHUSETTS - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Initials: 

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

Initials _____

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by

Lender shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without cost to Borrower. Borrower shall pay all costs of recordation, if any.

**REQUEST FOR NOTICE OF DEFAULT**
**AND FORECLOSURE UNDER SUPERIOR**
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage under Seal.

_____ (Seal)      _Robin Soroko Marron_ (Seal)
                              -Borrower      ROBIN  SOROKO  MARRON            -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
                              -Borrower                                     -Borrower

*(Sign Original Only)*

The Note secured by the Mortgage has:

| | |
|---|---|
| a Principal Sum of $ 79,000.00 | a Period of Loan of 180 MONTHS |
| a Rate of Interest of 10.500 | % Periodic Due Dates of MONTHLY |

**COMMONWEALTH OF MASSACHUSETTS,** Essex                County ss:

On this  29th  day of  July  2005                  , before me, the undersigned notary public, personally appeared
ROBIN  SOROKO  MARRON

proved to me through satisfactory evidence of identification, which was/were
to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:                          _____
            (Seal)                              Notary Public

# EXHIBIT 11

Schedule G - Exhibit A
Executory Contracts

| Type | Name | Street Address | City, State & Zip |
|------|------|----------------|-------------------|
| Assignments | MERSCORP, INC. | 1595 Spring Hill Road, Suite 310 | Vienna, VA 22182 |
| Audit (SOX) | RESOURCES GLOBAL PROFESSIONAL | 695 Town Center Drive, Suite 600 | Costa Mesa, CA 92626 |
| Benefit Provider | CAREFIRST BLUECROSS BLUESHIELD | 10455 Mill Run Circle | Owings Mills, MD 21117 |
| Benefit Provider | CORPEDIA CORPORATION | 2020 N. Central Avenue, Suite 1050 | Phoenix, AZ 85004 |
| Benefit Provider | CRAWFORD ADVISORS, LLC | 200 International Circle, Suite 4500 | Hunt Valley, MD 21031 |
| Benefit Provider | ENTELECHY TRAINING AND DEVELOPMENT LLC | 27401 Los Altos, Suite 390 | Mission, Viejo, CA 92691 |
| Benefit Provider | IMAGINATIK LTD. | 332 Newberry Street, 2nd Floor | Boston, MA 02115 |
| Benefit Provider | JBA CONSULTING GROUP, INC. | 9515 Deereco Road, Suite 806 | Timonium, MD 21093 |
| Benefit Provider | KFORCE, INC. | 1001 East Palm Avenue | Tampa, FL 33605 |
| Benefit Provider | MONSTER, INC. (set to expire by its terms on 12/28/2007) | 5 Clock Tower Place, 5th Floor | Maynard, MA 01754 |
| Benefit Provider | NRI, INC. | 1302 Concourse Drive, #203 | Baltimore, MD 21090 |
| Benefit Provider | PEOPLEBEST INC. | 19442 Mesa Drive | Villa Park, CA 92861 |
| Benefit Provider | TEKSYSTEMS, INC. | 7301 Parkway Drive | Hanover, MD 21076 |
| Benefit Provider | T ROWE PRICE TRUST CO. | 100 East Pratt Street | Baltimore, MD 21202 |
| Benefit Provider | TRIANGLE QUALITY SOLUTIONS INCORPORATED | 2000 Centre Green Way, Suite 150 | Cary, NC 27513 |
| Employment | Michael Sonnenfeld | 3531 Mt. Zion Road | Upperco, MD 21155 |
| Compliance | ADI COMPLIANCE CONSULTING, INC. | 625 N. Washington Street, Suite 303 | Alexandria, VA 22314 |
| Copier Leases | ADVANCE BUSINESS SYSTEMS & SUPPLY COMPANY | 10755 York Road | Cockeysville, MD 21030 |
| Copier Leases | BANK OF AMERICA LEASING | 305 W. Big Beaver Road, Suite 400 | Troy, MI 48884 |
| Copier Leases | CITICAPITAL CORPORATION | 6400 Las Colinas Boulevard | Irving, TX 75039 |
| Copier Leases | GENERAL ELECTRIC CAPITAL CORPORATION Attn: Collections/Canon Accounts | 1010 Thomas Edison Boulevard SW | Cedar Rapids, IA 60015 |
| Copier Maintenance | CANON BUSINESS SOLUTIONS-EAST, INC. | 6021 University Boulevard | Ellicott City, MD 21043 |
| Consulting Service Agmt. | IRON MT. INFORMATION MGMT., INC., Enterprise Solutions & Services Division | 745 Atlantic Avenue | Boston, MA 02111 |
| Courier | TRANS-BOX SYSTEMS, INC. | P.O. Box 23400 | Oakland, CA 94623 |
| Custodian | WELLS FARGO BANK NA / WELLS FARGO HOME EQUITY | 2801 4th Avenue S., MAC X9902-012 | Minneapolis, MN 55408 |
| Fed Ex Provider | PA & ASSOCIATES | 511 Chadwick Road | Timonium, MD 21093 |
| IT Service Provider | BUSINESS OBJECTS NEDERLAND BV | Beetslaan 19 A | 3723 DW Bilthoven |
| IT Service Provider | CAPTARIS, INC. | 10885 NE 4th Street, Suite 400 | Bellevue, WA 98004 |
| IT Service Provider | CHOICEPOINT PUBLIC RECORD, INC. | 1000 Alderman Drive | Alpharetta, GA 30005 |
| IT Service Provider | CISCO SYSTEMS CAPITAL | 170 West Tasman Drive | San Jose, CA 95134 |
| IT Service Provider | CISCO SYSTEMS INC. | 170 West Tasman Drive | San Jose, CA 95134 |
| IT Service Provider | CONFIGURESOFT, INC. | 4390 Arrowswest Drive | Colorado Springs, CO 80907 |
| IT Service Provider | CURTIS ENGINE & EQUIPMENT, INC. (Generator Service) | 3920 Vero Road, Suites I & J | Baltimore, MD 21227 |
| IT Service Provider | DATA PROTECTION SERVICES LLC | 97 Thistle Street | Mandeville, LA 70471 |
| IT Service Provider | EASTERN SOFTWARE CORPORATION (d/b/a FIDELITY EMPOWER) | 50 South Water Avenue | Sharon, PA 16146 |
| IT Service Provider | EMERGENCY POWER SERVICES, INC. | 10835 Philadelphia Road | White Marsh, MD 21162 |
| IT Service Provider | ENTERPRISE CONTROLS CONSULTING LP | 222 W. Colinas Boulevard, Suite 1650 | Irving , TX 75039 |
| IT Service Provider | FINANCIAL INDUSTRY COMPUTER SYSTEMS, INC. | 14285 Midway Road, Suite 200 | Addison, TX 75001 |
| IT Service Provider | HALOGEN SOFTWARE | 17 Auriga Drive | Ottowa, Ontario K2E 7T9 |
| IT Service Provider | HIRSCH ELECTRONICS CORPORATION | 3000 Ashbury Court | Woodstock, GA 30189 |
| IT Service Provider | INFORMATICA CORPORATION | 100 Cardinal Way | Redwood City, CA 94063 |
| IT Service Provider | JOHNSON CONTROLS INC. | 60 Loveton Circle | Sparks, MD 21152 |
| IT Service Provider | MCI WORLDCOM COMMUNICATIONS, INC. | 3300 East Renner Road | Richardson, TX 75061 |
| IT Service Provider | MICROSOFT LICENSING, GP | Dept. 551, Volume Licensing, Neil Road, Suite 210 | Reno, NV 89511-1137 |
| IT Service Provider | MICROSTRATEGY SERVICES CORPORATION | 1861 International Drive | McLean, VA 22102 |
| IT Service Provider | NOVASOFT | 275 NE Venture Drive | Waukee, IA 50263 |
| IT Service Provider | ORACLE WORLD HEADQUARTERS | 500 Oracle Parkway | Redwood Shores, CA 94065 |
| IT Service Provider | QUEST SOFTWARE, INC. | 8001 Irvine Center Drive | Irvine, CA 92618 |
| IT Service Provider | RATA ASSOCIATES, LLC | 1916 Boothe Circle | Longwood, FL 32750 |
| IT Service Provider | REGSDATA, LLC | 261 High Street | Milford, CT 06460 |

# EXHIBIT 12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                          *

**FIELDSTONE MORTGAGE**          *          Case No. 07-21814-JS
**COMPANY,**                                           (Chapter 11)
                                                *
     Debtor.
*     *     *     *     *     *     *     *     *     *     *     *

## DEBTOR'S AMENDED OMNIBUS MOTION TO
## REJECT EXECUTORY AGREEMENTS

Fieldstone Mortgage Company, Debtor and Debtor-in-Possession (the "Debtor"), files

this amended omnibus motion (the "Amended Motion") to reject executory agreements and, in

support thereof, states:

1.      This Court has jurisdiction over this Amended Motion pursuant to 28 U.S.C. §§

157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate

for the relief sought herein is Section 365 of the Bankruptcy Code.

### Background

2.      The Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code

on November 23, 2007 (the "Petition Date").

3.      Since the Petition Date, the Debtor has remained in possession of its property and

continues to manage its financial affairs as a debtor-in-possession pursuant to Sections 1107 and

1108 of the Bankruptcy Code.

4.      The Debtor was a nationwide mortgage banking company founded in 1995 that

originated and sold conforming and non-conforming residential mortgage loans secured by

residential real estate. For the year ended December 31, 2006, the Debtor originated

approximately $5.5 billion of mortgage loans and was licensed, or exempt from licensing

requirements, to originate residential mortgages in 50 states and the District of Columbia. As of December 31, 2006, the Debtor had approximately 1,000 employees.

5.      As part of the operation of its business the Debtor utilized the services of various third party suppliers, consultants, vendors and was party to a series of other executory agreements.

6.      On or about February 11, 2008, the Debtor filed an Omnibus Motion to Reject Executory Contracts (the "Motion") [Docket No. 219]. Since the filing of the Motion, the Debtor has negotiated the terms of a plan of reorganization and, on April 14, 2008 filed the Debtor's Plan of Reorganization (the "Plan") [Docket No. 419]. Pursuant to the terms of the Plan, the Debtor has determined to retain certain executory contracts which it previously sought to reject in the Motion and further determined that it is in its best interests to reject three (3) additional executory contracts that were not included in the Motion, thereby necessitating the filing of this Amended Motion.

**Relief Requested**

7.      As part of its ongoing reorganization efforts the Debtor has evaluated each executory agreement to which it is a party in order to determine if such agreement is necessary and/or beneficial to the estate. Attached hereto as *Exhibit 1* is a list of executory agreements, each of which the Debtor has evaluated and determined, in the exercise of its sound business judgment, that it is in its best interests of the estate to reject (the "Agreements").[1]

8.      The Agreements include a series of executory agreements providing for, among other things, IT and communication services, marketing support, health care consultants, mortgage sales and servicing, document storage and other ordinary course vendors.

---

[1] The list of Agreements attached hereto as *Exhibit 1* amends and supersedes the Exhibit that was attached to and incorporated into the Motion.

9.      The Debtor has reviewed the terms of each of the Agreements, the services or benefits provided thereunder and has concluded that the Agreements provide no benefit to the estate and as such the Agreements are burdensome and of no benefit to the Debtor or the estate. Accordingly, the Debtor seeks the entry of an order pursuant to Section 365(a) of the Bankruptcy Code authorizing the rejection of the Agreement as of the date of the filing of the Motion.

10.      Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may...reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *In re Pesce Baking Co.*, 43 B.R. 949, 956 (Bankr. N.D. Ohio 1984). Under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate. *In re Chi-Feng Huang*, 23 B.R. 798, 801 (Bankr. 9th Cir. 1982). Moreover, a debtor's decision to reject an executory contract or unexpired lease should be approved "except upon a finding of bad faith or gross abuse of the [debtor's] business discretion." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) *cert. denied*, 475 U.S. 1057 (1986). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control the case impartially." *Richmond Leasing v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

11.      The Debtor has determined that each of the Agreements should be rejected. The Debtor has reached this decision in the exercise of its reasonable business judgment. The Debtor has significantly reduced its workforce as part of its bankruptcy case such that the Debtor no

longer needs the goods or services provided under the Agreements. To the extent the Debtor is forced to continue to maintain its obligations under the Agreements, the estate will needlessly incur fees and expenses. Rejection will ensure that any possible obligations under the Agreements are affirmatively terminated and will avoid the possibility of accruing administrative expenses or other claims.

12. For the foregoing reasons, the Debtor submits that there is sufficient cause to reject the Agreements effective as of the date of the filing of the Motion.

### Local Rule 6006-1(A) Notice

13. Please take notice that the Court may rule upon this request without a hearing if there is no timely request for a hearing.

WHEREFORE, Fieldstone Mortgage Company respectfully requests the following relief:

A. That the Court enter an order authorizing the rejection of each of the Agreements set forth on *Exhibit 1* as of the date of the filing of the Motion; and

B. That the Debtor be granted such other and further relief as is just and equitable.

/s/    Joel I. Sher
Joel I. Sher, Bar No. 00719
Richard M. Goldberg, Bar No. 07994
Shapiro Sher Guinot & Sandler
36 South Charles Street, 20th Floor
Baltimore, MD  21201-3147
(410) 385-0202

*Attorneys for Fieldstone Mortgage Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st  day of May, 2008, a copy of the foregoing was

served on all parties listed on the attached service list by first-class mail, unless said party is a

registered CM/ECF participant and the Notice of Electronic Filing indicates that notice was

electronically mailed to said party.


/s/      Joel I. Sher
Joel I. Sher

EXHIBIT I

Fieldstone Mortgage Company

Executory Contracts to be Rejected

| Contract | Type | Name | Street Address | City, State & Zip |
|---|---|---|---|---|
| Exec Contract | Assignments | MERSCORP, INC. ORG ID 1001023 | 1595 Spring Hill Road, Suite 310 | Vienna, VA 22182 |
| Exec Contract | Serving Overnight | CLAYTON TECHNOLOGIES, INC. | 2 Corporate Drive, Suite 800 | Shelton, CO 06484 |
| Exec Contract | IT Service Provider | WALL STREET ANALYTICS | Two Grand Central Tower, 140 East 45th Street | New York, NY 10017 |
|  | Marketing | ACCESS TCA, INC | One Main Street | Whitinsville, MA  01588 |
| No Contract | Marketing | ACXIOM CORPORATION (SMARTDM LLC) | 822 Air Park Center Drive | Nashville, TN 37217 |
| Exec Contract | Compliance | ADI COMPLIANCE CONSULTING, INC | 625 N  Washington Street, Suite 303 | Alexandria, VA 22314 |
| Exec Contract | Vendor (Appraisals) | APPRAISAL MANAGEMENT NETWORK SERVICES, INC | 550 N. Reo Street, suite 110 | Tampa, FL 33609 |
| Exec Contract | Secondary | AURORA LOAN SERVICES INC | 10350 Park Meadow Drive, 4th Floor | Littleton, CO 80124 |
| Exec Contract | Secondary | BANK OF AMERICA | 233 S  Wacker Drive, Suite 2800 | Chicago, IL 60606 |
| Exec Contract | Copier Leases | BANK OF AMERICA LEASING | 305 W  Big Beaver Road, Suite 400 | Troy, MI 48884 |
| Exec Contract | Secondary | BEAR STEARNS BANK PLC | 383 Madison Avenue | New York, NY 10179 |
| Exec Contract | Marketing | BILLS.COM, LLC | 1875 South Grant Street, Suite 400 | San Mateo, CA 94402 |
| Exec Contract | Secondary | BLOOMBERG | 731 Lexington Avenue | New York, NY 10022 |
| Exec Contract | Copier Maintenance | CANON BUSINESS SOLUTIONS-EAST, INC | 6021 University Boulevard | Ellicott City, MD 21043 |
| No Contract | Vendor | CBCINNOVIS, INC | 250 East Town Street | Columbus, OH 43215 |
| Exec Contract | Secondary | CHASE BANK, USA, NA | 200 White Clay Center Drive | Newark, DE 19711 |
| Exec Contract | Secondary | CHASE MANHATTAN MORTGAGE CORPORATION | 300 Tice Boulevard, 3rd Floor | Woodcliff Lake, NJ 07677 |
| Exec Contract | Secondary | CHASE MANHATTEN MORTGAGE CORPORATION | 1400 East Newport Center Drive | Deerfield Beach, FL 33442 |
| Exec Contract | Secondary | CHASE MANHATTAN MORTGAGE CORPORATION | 343 Thornhall Avenue | Edison, NJ 8837 |
| Exec Contract | Marketing | CHOICEPOINT PRECISION MARKETING INC. | 1000 Alderman Drive | Alpharetta, GA 30005 |
| Exec Contract | Secondary | CITIBANK FSB, CITIBANK (WEST) FSB, CITIBANK NA | 1000 Technology Drive, MS 111 | O'Fallon, MO 63304 |
| Exec Contract | Copier Leases | CITICAPITAL CORPORATION | 6400 Las Colinas Boulevard | Irving, TX 75039 |
| Exec Contract | IT Service Provider | CONFIGURESOFT, INC | 4390 Arrowswest Drive | Colorado Springs, CO 80907 |
| Exec Contract | Secondary | CORELOGIC SYSTEMS, INC | 10360 Old Placerville Road, Suite 100 | Sacramento, CA 95827 |
| Exec Contract | Benefit Provider | CORPEDIA CORPORATION | 2020 N  Central Avenue, Suite 1050 | Phoenix, AZ 85004 |
| Exec Contract | Secondary | COUNTRYWIDE HOME LOANS, INC. | 4500 Park Granada | Calabasas, CA 91302 |
| No Contract | Marketing | CREDIT PLUS, INC | 31550 Winter Place Parkway | Salisbury, MD 21804 |
| Exec Contract | Vendor (Credit) | CREDIT PLUS, INC | 530 Riverside Drive | Salisbury, MD 21801 |
| Exec Contract | Secondary | CREDIT SUISSE | Eleven Madison Avenue | New York, NY 10010 |
| Exec Contract | Secondary | CREDIT SUISSE INTERNATIONAL | One Cabot Square | London, England E14 4QJ |
| No Contract | Marketing | CREDIT TECHNOLOGIES, INC | 50481 West Pontiac Trail | Wixom, MI 48393-2028 |
| Exec Contract | Vendor (Credit) | CREDIT TECHNOLOGIES, INC | 40480 Grand River Avenue, Suite 11 | Wixom, MI 48393-2028 |
|  | Secondary | Credit-Based Asset Servicing & Securitization LLC | 335 Madison Avenue | New York, New York 10017 |
| Exec Contract | Vendor (Credit) | DATA QUICK INFORMATION SYSTEMS, INC | 9620 Towne Center Drive | San Diego, CA 92121 |
| Exec Contract | Secondary | DEUTSCHE BANK | 60 Wall Street | New York, NY 10005 |
| Exec Contract | Secondary | DLJ MORTGAGE CAPITAL , INC  C/O CREDIT SUISSE SECURITIES | Eleven Madison Avenue, 4th Floor | New York, NY 10010 |
| No Contract | Marketing | ELEADZ | 65 Enterprise | Aliso Viejo, CA 92656 |
| Exec Contract | Secondary | EMC MORTGAGE CORPORATION | MacArthur Ridge II, 909 Hidden Ridge Drive, | Irving, TX 75038 |
| Exec Contract | Benefit Provider | ENTELECHY TRAINING AND DEVELOPMENT LLC | 27401 Los Altos, Suite 390 | Mission, Viejo, CA 92691 |

1 of 3

# EXHIBIT 13

Entered: June 04, 2008
Signed: June 03, 2008

**SO ORDERED**

*James F. Schneider*

**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | |
| **FIELDSTONE MORTGAGE** | * | Case No. 07-21814-JS |
| **COMPANY,** | | (Chapter 11) |
| | * | |
| Debtor. | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ORDER AUTHORIZING REJECTION OF EXECUTORY AGREEMENTS

Upon consideration of the Amended Omnibus Motion to Reject Executory Agreements

(the "Amended Motion") filed by Fieldstone Mortgage Company, and the Court finding that

adequate notice of the Amended Motion has been given, and that the rejection of the executory

agreements attached to the Amended Motion is within the reasonable business judgment of the

Debtor and therefore good cause has been shown to warrant the relief requested in the Amended

Motion, it is, by the United States Bankruptcy Court for the District of Maryland, hereby:

**ORDERED** that the Amended Motion is GRANTED; and it is further

**ORDERED** that each of the executory agreements set forth on *Exhibit 1* hereto are

rejected effective as of February 11, 2008.

cc:    Joel I. Sher, Esquire
        Richard M. Goldberg, Esquire
        Shapiro Sher Guinot & Sandler
        36 South Charles Street, Suite 2000
        Baltimore, Maryland  21201

        Attached service list.

**- END OF ORDER -**

# EXHIBIT 14

Search

- MGIC Australia
- Contact

HomeCompanyDivisionsInvestor InformationMedia CenterCareers
Investor Information

- Analyst Coverage
- Annual Reports
- Board of Directors
- Corporate Snapshot
- Corporate Governance
- Dividends & Splits
- E-Mail Alerts
- Executive Leadership
- Investor Calendar
- Investor Contacts
- Literature/Inquiry Request
- Presentations/Webcasts
- Press Releases
- Proxy Information
- SEC Filings
- Statutory Filings
- Stock Info

# News Release

View printer-friendly version

## C-BASS and Fieldstone Investment Corporation Amend Merger Agreement

### Fieldstone Stockholders To Receive $4.00 Per Share In Cash And C-Bass To Provide Additional Liquidity To Fieldstone

NEW YORK, and COLUMBIA, Md., March 16, 2007 /PRNewswire-FirstCall via COMTEX News Network/ -- Credit-Based Asset Servicing and Securitization LLC (C-BASS), an established leader in servicing and securitizing credit-sensitive residential mortgages, and an affiliate of MGIC (NYSE: MTG) and Radian Group Inc. (NYSE: RDN), and Fieldstone Investment Corporation (Nasdaq: FICC), a mortgage banking company that originates, sells, and invests primarily in non-conforming single-family residential mortgage loans, today announced that they have amended their previously announced merger agreement to reduce the per share purchase price to $4.00 per share. The reduction in purchase price reflects the cost to provide Fieldstone with needed additional liquidity, pending the closing of the merger. This additional liquidity is provided through the sale to C-BASS, at Fieldstone's option, of securities and mortgage loans owned by Fieldstone.

Michael J. Sonnenfeld, Fieldstone's President and CEO, stated "The recent severe deterioration of the market for subprime loans has sharply reduced our liquidity required us to reduce our merger price in exchange for immediate added liquidity prior to completing our proposed merger with C-BASS."

John Dragni, Chief Operating Officer at C-BASS, said "We are confident that this strategic acquisition will be a positive contributor to C-BASS over the long term."

Completion of the merger remains contingent on various closing conditions, including regulatory approvals, certain consents of third parties and the approval of a majority of Fieldstone's outstanding common stock. Fieldstone's stockholders will be asked to vote to approve the proposed transaction at a special meeting to announced.

Fieldstone will file a Form 12b-25 notification of late filing with the Securities and Exchange Commission to receive a 15 day extension to file its Annual Report on for the fiscal year ended December 31, 2006 to include a description of the terms of this amendment.

About C-BASS

C-BASS, based in New York, is a leading issuer, servicer and investor specializing in credit-sensitive residential mortgage assets. C-BASS is a limited liability company capitalized by MGIC Investment Corporation (NYSE: MTG), Radian Group Inc. (NYSE: RDN), and C-BASS management. MGIC Investment Corporation, based in Milwaukee, WI is the parent of Mortgage Guaranty Insurance Corporation (MGIC), and Radian Group Inc., based in Philadelphia, PA is the parent of Radian Guaranty Inc.

About Fieldstone Investment Corporation

Fieldstone Investment Corporation owns and manages a portfolio of non-conforming mortgage loans originated primarily by its mortgage origination subsidiary, Mortgage Company, and has elected to be a real estate investment trust for federal income tax purposes. Founded in 1995, Fieldstone Mortgage Company is a nationwide residential mortgage banking company that originates non-conforming and conforming residential mortgage loans through independent mortgage serviced by regional wholesale operations centers and a network of retail branch offices located throughout the country. Fieldstone is headquartered in Columbia, Maryland.

Safe Harbor Statement

This press release contains forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange 1934. Such forward-looking statements involve known and unknown risks, uncertainties and other factors that may cause the actual results, performance, or achievements or transactions of the company and its affiliates or industry results to be materially different from any future results, performance, achievements or transactions expressed or implied by such forward-looking statements. Such factors that could affect, prevent or delay the closing of the transactions described release and such other risk factors affecting Fieldstone include, but are not limited to (i) the potential inability to satisfy the conditions to closing of the merger or possibility that Fieldstone's stockholders do not approve the merger, (ii) Fieldstone's ability to implement or change aspects of its portfolio strategy; (iii) interest rate and the level of interest rates generally; (iv) the sustainability of loan origination volumes and levels of origination costs; (v) compliance with the covenants in Field credit and repurchase facilities and continued availability of credit facilities for the liquidity it needs to support its origination of mortgage loans; (vi) the ability to securitize mortgage loans on favorable economic terms; (vii) deterioration in the credit quality of Fieldstone's loan portfolio; (viii) the nature and amount of comp the impact of changes to the fair value of Fieldstone's interest rate swaps on its net income, which will vary based upon changes in interest rates and could cause income to vary significantly from quarter to quarter; and (x) other risks and uncertainties outlined in Fieldstone Investment Corporation's periodic reports filed with

Securities and Exchange Commission. All subsequent written and oral forward-looking statements attributable to us or any person acting on our behalf are quali
cautionary statements in this section. We undertake no obligation to update or publicly release any revisions to forward-looking statements to reflect events, circ
or changes in expectations after the date of this press release.

Additional Information About the Merger and Where to Find It

This communication is being made in respect of the proposed merger transaction involving Fieldstone and C-BASS. In connection with the proposed transaction.
will file a proxy statement with the Securities and Exchange Commission (SEC). Fieldstone stockholders are urged to read the proxy statement filed with the SEC c
and in its entirety when it becomes available because it will contain important information about the proposed transaction. The final proxy statement will be mai
Fieldstone stockholders. In addition, stockholders will be able to obtain the proxy statement and all other relevant documents filed by Fieldstone with the SEC fre
charge at the SEC's website at www.sec.gov. When available, the proxy statement and other pertinent documents also may be obtained for free at Fieldstone
www.fieldstoneinvestment.com, or by contacting Mark Krebs, Senior Vice President, Fieldstone Investment Corporation, telephone (410) 772.7275.

Participants in the Solicitation

Fieldstone and its directors and officers and other members of management and employees may be deemed to be participants in the solicitation of proxies fror
stockholders of Fieldstone in respect to the proposed transaction. Information about Fieldstone and its directors and executive officers, and their ownership of Fie
securities is set forth in the proxy statement for the 2006 Annual Meeting of Stockholders of Fieldstone which was filed with the SEC on April 26, 2006. Additional inf
regarding the interests of those persons may be obtained by reading the proxy statement relating to the proposed transactions, when it becomes available.

SOURCE Fieldstone Investment Corporation; C-BASS

Lisa Brzezinski, Vice President of C-BASS, +1-212-850-7724 lisa.Brzezinski@c-bass.com; Mark Krebs, Senior Vice President of Fieldstone Investment Corporation, +1-4
7275 or mkrebs@fmcc.com

http://www.fieldstoneinvestment.com

## Investor Tool Kit

🖨 View printer friendly version
✉ E-Mail this page
🗒 RSS Feeds
📧 Receive E-Mail Alerts

- Terms & Conditions
- Disclaimer
- Privacy & Safeguards
- Site Map
- © MGIC Investment Corporation

# EXHIBIT 15

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, et al., | Case No. 10-16040 (ALG) |
| Debtors.[1] | Joint Administration Requested |

## SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

*Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtors' Schedules and Statements of Financial Affairs*

### GENERAL BACKGROUND AND DEFINITIONS

Credit-Based Asset Servicing and Securitization LLC ("C-BASS") and affiliated debtor entities (each a "Debtor" and collectively, the "Debtors") submits on behalf of all Debtors noted above the attached Schedules of Assets and Liabilities (the "Schedules"), Statements of Financial Affairs (the "SOFAs"), and Statement of Equity Security Holders pursuant to 11 U.S.C. § 521 and Federal Rule of Bankruptcy Procedure 1007.

The information in the Schedules and SOFAs is unaudited. While the Debtors' management has made every reasonable effort to ensure that the Schedules and SOFAs are accurate and complete based on the information available at the time of preparation and filing, information that becomes available subsequently may result in material changes to these Schedules and SOFAs. The Debtors reserve their rights to amend or supplement the Schedules and SOFAs as appropriate.

These Consolidated Notes (the "Notes") are incorporated by reference in, and comprise an integral part of, the Schedules and SOFAs and should be referred to in connection with any review of the Schedules and SOFAs.

The contents of these Schedules and SOFAs neither constitute a waiver of any rights or claims of the Debtors nor an admission of the existence, amount or nature of potential claims against the Debtors. The Debtors reserve their rights to dispute or challenge the status and amount of any claimant listed on **Schedules D, E, and F** as well as the validity, priority, perfection, or the extent of any lien securing any claim listed on **Schedule D** except as otherwise provided in the proposed Stipulation And Interim Order Pursuant To Sections 105(A), 361 And 363 Of The Bankruptcy Code And Bankruptcy Rule 4001 Granting Adequate Protection To Pre-Petition Senior Lenders ("the Adequate Protection Stipulation").

### BASIS OF PRESENTATION

The Schedules require the Debtors to report assets at current market values. In instances where the Debtors have current valuations[2], these Schedules and SOFAs reflect those values. Otherwise, the Debtors have reported assets on a net book value or other available basis and noted such treatment. For these and other reasons, the Schedules and SOFAs may not reconcile to the Debtors' books and records recorded on a GAAP basis. The Debtors make no representation of the value ultimately realizable from or the collectability of any assets presented herein.

---

[1] The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

[2] The nature and date, if applicable, of any such valuation is noted as used for the determination of current market value in the Schedules.

EXHIBIT B.15

Credit-Based Asset Servicing and Securitization LLC ("C-BASS LLC")
Other Negotiable and Non-negotiable Instruments
Schedule B.15

| Asset Type | CUSIP | Description of Property | Location of Property | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| Security | 17309VAW3 | CMALT 2006-A4 (ALL) B4 | U.S. Bank National Association | Unknown |
| Security | 17309VAX1 | CMALT 2006-A4 (ALL) B5 | U.S. Bank National Association | Unknown |
| Security | 17309VAY9 | CMALT 2006-A4 (ALL) B6 | U.S. Bank National Association | Unknown |
| Security | 18974BBB4 | CMALT 2006-A5 (ALL) B5 | U.S. Bank National Association | Unknown |
| Security | 18974BBC2 | CMALT 2006-A5 (ALL) B6 | U.S. Bank National Association | Unknown |
| Security | 12566TAW7 | CMALT 2006-A7 (ALL) B4 | U.S. Bank National Association | Unknown |
| Security | 12566TAX5 | CMALT 2006-A7 (ALL) B5 | U.S. Bank National Association | Unknown |
| Security | 12566TAY3 | CMALT 2006-A7 (ALL) B6 | U.S. Bank National Association | Unknown |
| Security | 17307GNC8 | CMLT 2004-02 (0) B6 | U.S. Bank National Association | Unknown |
| Security | 22943HAP1 | CSAB 2006-1 (0) B | U.S. Bank National Association | Unknown |
| Security | 126671RK4 | CWABS 2002-BC3 (0) X | U.S. Bank National Association | Unknown |
| Security | — | CWABS 2005-BC4-NIM (0) OTC | U.S. Bank National Association | Unknown |
| Security | 126670XZ6 | CWABS 2006-BC1 (ALL) B | U.S. Bank National Association | Unknown |
| Security | 12668TAR5 | CWABS 2007-BC1 (ALL) B | U.S. Bank National Association | Unknown |
| Security | 12669EDZ6 | CWALT 2003-06T2 (0) B5 | U.S. Bank National Association | Unknown |
| Security | 02147YAV7 | CWALT 2006-27CB (0) B3 | U.S. Bank National Association | Unknown |
| Security | 02147YAW5 | CWALT 2006-27CB (0) B4 | U.S. Bank National Association | Unknown |
| Security | 02147YAX3 | CWALT 2006-27CB (0) B5 | U.S. Bank National Association | Unknown |
| Security | 02148BAK0 | CWALT 2006-33CB (ALL) B3 | U.S. Bank National Association | Unknown |
| Security | 02148BAL8 | CWALT 2006-33CB (ALL) B4 | U.S. Bank National Association | Unknown |
| Security | 02148BAM6 | CWALT 2006-33CB (ALL) B5 | U.S. Bank National Association | Unknown |
| Security | 02148YAR5 | CWALT 2006-42 (ALL) B3 | U.S. Bank National Association | Unknown |
| Security | 02148YAS3 | CWALT 2006-42 (ALL) B4 | U.S. Bank National Association | Unknown |
| Security | 02148YAT1 | CWALT 2006-42 (ALL) B5 | U.S. Bank National Association | Unknown |
| Security | 02149HBN9 | CWALT 2007-02CB (ALL) B3 | U.S. Bank National Association | Unknown |
| Security | 126671RA6 | CWL 2002-02 (0) X | U.S. Bank National Association | Unknown |
| Security | 126671WP7 | CWL 2002-5 (ALL) N | U.S. Bank National Association | Unknown |
| Security | 126670DT2 | CWL 2005-10NIM (0) OTC | U.S. Bank National Association | Unknown |
| Security | 23335NAJ6 | DVI 2003-1 (0) C2 | U.S. Bank National Association | Unknown |
| Security | BCC08DCQ3 | FHLT 2002-01 (ALL) P | U.S. Bank National Association | Unknown |
| Security | — | FHLT 2002-02 (ALL) P | U.S. Bank National Association | Unknown |
| Security | — | FHLT 2003-1 (ALL) PEN | U.S. Bank National Association | Unknown |
| Security | — | FHLT 2004-1 (ALL) P | U.S. Bank National Association | Unknown |
| Security | — | FINA 2003-1 (ALL) P | U.S. Bank National Association | Unknown |
| Security | 80382SCH9 | FINAN 2004-1 (ALL) B | U.S. Bank National Association | Unknown |
| Security | — | FINAN 2004-1 (ALL) OTC | U.S. Bank National Association | Unknown |
| Security | 31659TBV6 | FMIC 2004-3 (ALL) M8 | U.S. Bank National Association | Unknown |
| Security | 31659TCG8 | FMIC 2004-4 (ALL) M6 | U.S. Bank National Association | Unknown |
| Security | 31659TCH6 | FMIC 2004-4 (ALL) M7 | U.S. Bank National Association | Unknown |
| Security | 31659TCU7 | FMIC 2004-5 (ALL) M6 | U.S. Bank National Association | Unknown |
| Security | 31659TCV5 | FMIC 2004-5 (ALL) M7 | U.S. Bank National Association | Unknown |
| Security | 31659TDM4 | FMIC 2005-1 (ALL) M10 | U.S. Bank National Association | Unknown |
| Security | 31659TED3 | FMIC 2005-2 (ALL) M10 | U.S. Bank National Association | Unknown |
| Security | 31659TET8 | FMIC 2005-3 (ALL) M10 | U.S. Bank National Association | Unknown |
| Security | 31659TEU5 | FMIC 2005-3 (ALL) M11 | U.S. Bank National Association | Unknown |
| Security | 31659TEV3 | FMIC 2005-3 (ALL) M12 | U.S. Bank National Association | Unknown |
| Security | 31659TEW1 | FMIC 2005-3 (ALL) M13 | U.S. Bank National Association | Unknown |
| Security | 31659TES0 | FMIC 2005-3 (ALL) M9 | U.S. Bank National Association | Unknown |
| Security | 31659TFK6 | FMIC 2006-1 (0) M10 | U.S. Bank National Association | Unknown |
| Security | 31659TFL4 | FMIC 2006-1 (0) M11 | U.S. Bank National Association | Unknown |
| Security | 31659EAP3 | FMIC 2006-2 (ALL) M10 | U.S. Bank National Association | Unknown |
| Security | 31659EAQ1 | FMIC 2006-2 (ALL) M11 | U.S. Bank National Association | Unknown |
| Security | 316599AQ2 | FMIC 2006-3 (ALL) M10 | U.S. Bank National Association | Unknown |
| Security | 31659XAH9 | FMIC 2006-S1 (0) B1 | U.S. Bank National Association | Unknown |

# EXHIBIT 16

Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (to be admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors
and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| CREDIT-BASED ASSET SERVICING AND SECURITIZATION LLC, et al., | Case No. 10-16040 (ALG) |
| Debtors.[1] | Joint Administration Requested |

## MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR C-BASS CBO HOLDING LLC TO ABANDON ITS TRUST SECURITIES

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move (the "Motion") for entry of an order, the proposed form of which is attached hereto as **Exhibit A** (the "Proposed Order"), authorizing Debtor CBO Holding LLC ("CBO Holding") to abandon its Trust Securities (as defined below) to the applicable Owner Trustees (as defined below). In support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM 1 LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

# I.    Background

## A.    The Chapter 11 Cases

1.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or an examiner has been made in these chapter 11 cases and no statutory committees have been appointed or designated.

2.     Concurrently with the filing of this Motion, the Debtors have sought procedural consolidation and joint administration of these chapter 11 cases under the case of C-BASS.  A description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the *Declaration of Andrew Rickert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is being filed contemporaneously with this Motion.

## B.    The Debtors' Capital Structure

3.     As set forth in greater detail in the First Day Declaration, the Debtors financed their prepetition activities with multiple repurchase agreements of mortgage loans and mortgage-backed securities (collectively, the "Repurchase Agreements"), and a variety of secured and unsecured debt.   Substantially all of the Repurchase Agreements constituted repurchase agreements within the meaning of section 101(47) of the Bankruptcy Code and fell within the safe-harbor of section 559 of the Bankruptcy Code.  The Debtors' principal secured debt consisted of a $1,855,000,000 senior secured credit facility (the "Senior Credit Facility") syndicated among a number of lenders (the "Senior Lenders") and secured by first liens on and

2

security interests in substantially all of the Debtors' assets (other than the assets covered by the Repurchase Agreements) and junior liens on and security interests in the Debtors' assets covered by the Repurchase Agreements (the "Senior Credit Facility Collateral").

4.      As part of a large-scale forbearance and restructuring in the Summer and Fall of 2007, culminating in the execution of the Override Agreement (as defined in the First Day Declaration), the Debtors granted numerous subordinate liens and security interests, including without limitation subordinate liens and security interests on the Senior Credit Facility Collateral as additional collateral security for the Repurchase Agreements.    Under the Intercreditor Agreement (as defined in the First Day Declaration) executed simultaneously with the Override Agreement, however, the Senior Lenders have the exclusive and unilateral right to enforce their liens and security interests against, and otherwise consent to dispositions of, the Senior Credit Facility Collateral.

5.      Over the course of the past 40 months, based on defaults under the Senior Credit Facility triggered by the mortgage crisis in the United States and pursuant to multiple forbearance and related agreements, the vast majority of the collateral for the Senior Credit Facility has been sold or foreclosed upon and the proceeds thereof applied to reduce the balance of the Senior Credit Facility to its current principal balance of approximately $170 million. The collateral remaining in the Debtors' possession and control as of the Petition Date (collectively, the "Remaining Collateral") consists principally of (i) various subordinated tranches of mortgage-backed securities, including the Trust Securities (ii) certain collateralized bond obligation management rights, (iii) whole loans, (iv) REOs, (v) claims against third parties, (vi) deposits with surety bond providers, (vii) furniture, fixtures, equipment and various forms of

intellectual property, (viii) receivables for the unused amount, if any, of professional retainers, and (ix) cash collateral on deposit in the Debtors' centralized cash operating account.

6.    Similarly, based on defaults under the Repurchase Agreements triggered by the mortgage crisis in the United States, all of the Repurchase Agreements have been terminated by the respective counterparties, and substantially all of the assets subject to the Repurchase Agreements have been sold or retained by such counterparties.

7.    Pursuant to the Restructuring Facilitation Agreement, dated as of September 20, 2010 (the "RFA"), by and among the Debtors, JPMorgan Chase Bank, N.A., as administrative agent under the Senior Credit Facility (the "Administrative Agent"), and certain lenders under the Senior Credit Facility that are signatories to the RFA (collectively, the "Participant Lenders"), the Administrative Agent and Participant Lenders have agreed *inter alia* to permit the Debtors to use up to $8.2 million of the cash proceeds of the Remaining Collateral in accordance with the terms and conditions of an adequate protection stipulation, interim approval of which the Debtors are seeking contemporaneously with other first-day motions. The RFA provides a timeline pursuant to which the Debtors are to use their respective best efforts to liquidate the Remaining Collateral. Specifically, with respect to the Trust Securities, the Debtors are required to use their best efforts to obtain entry of an order from the Court authorizing the abandonment of the Trust Securities and effectuate the abandonment thereof by December 13, 2010.

C.    **Description of CBO Holding and the Trust Securities**

8.    CBO Holding is a Delaware limited liability company that qualifies as a real estate investment trust ("REIT") as defined in section 856 of the Internal Revenue Code of 1986 (as amended, the "Internal Revenue Code"). CBO Holding was formed to invest in collateralized debt obligation bonds and equity securities, other mortgage-related securities and mortgage loans.

4

9.      CBO Holding issued both common limited liability company membership interests (collectively, the "Common Membership Interests") and Class A preferred membership interests (collectively, the "Class A Membership Interests"; together with the Common Membership Interests, the "Interests"). Debtor Credit-Based Asset Servicing and Securitization LLC ("C-BASS") holds 100% of the Common Membership Interests. Approximately 125 parties, none of which is affiliated with C-BASS (collectively, the "Class A Members") hold 100% of the Class A Membership Interests.

10.      The sole assets currently owned by CBO Holding are certain mortgage-backed owner trust certificates (collectively, the "Owner Trust Certificates") and one mortgage-backed subordinated bond (the "Subordinated Bond"; together with the Owner Trust Certificates, the "Trust Securities") purchased from third party mortgage investment trusts (collectively, the "Trusts"). The Trust Securities are among the Remaining Collateral subject to a lien under the Senior Credit Facility. Annexed hereto as **Schedule 1** is a true and complete description of the Trust Securities.

11.      The Owner Trust Certificates represent the right to receive certain residual cash flows from the Trusts, which hold specified pools of residential mortgage loans. As a result of holding the Owner Trust Certificates, CBO Holding is required to file federal and state tax returns that treat the income and expenses of the Trusts as its own. The Subordinated Bond is aggregated with the Owner Trust Certificates for tax purposes. If the Owner Trust Certificates were to be abandoned and the Subordinated Bond retained, CBO Holding would still be required to file federal and state tax returns for income from the Subordinated Bond.

12.      The Owner Trust Certificates represent the "first loss" interests in the Trusts. meaning that losses on the mortgage-related assets owned by the Trusts are allocated to and

5

hence erode the value of the Owner Trust Certificates before any such losses are allocated to and thus erode the value of various tranches of promissory notes issued by the Trusts (collectively, the "Notes"). Essentially, the Owner Trust Certificates constitute equity in the Trusts, and the Notes constitute debt. Similarly, losses on the mortgage-related assets owned by the Trusts are allocated to and hence erode the value of the Subordinated Bond before any such losses are allocated to and thus erode the value of the more senior Notes.

13.     The mortgage crisis in the United States over the past few years precipitated a rapid decline in the value of mortgage-related assets owned by the Trusts, causing the Trust Securities to lose all value. Nevertheless, CBO Holding's ownership of the Trust Securities continues to obligate CBO Holding under applicable law to file federal and state tax returns, which may include filing state tax returns in all 50 states. If CBO Holding continues to hold the Trust Securities beyond December 31, 2010, CBO Holding will be required to file another year's worth of such tax returns, diminishing whatever funds otherwise would be available for distribution to unsecured creditors under the Debtors' Joint Chapter 11 Plan filed concurrently herewith. Accordingly, the Debtors seek authority for CBO Holding to abandon the Trust Securities to the respective owner trustees (the "Owner Trustees")[2] of the Trusts.

## II.     Jurisdiction, Venue and Predicates for Relief Requested

14.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated July 10, 1984 (Ward, Acting C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C.

---

[2]     The Owner Trustees for the respective Trusts are listed on Schedule 1 hereto.

§ 157(b)(2). The predicates for the relief requested herein are section 554(a) of the Bankruptcy Code, Bankruptcy Rule 6007, and Local Rule 6007-1.

### III. Relief Requested

15.     By this Motion,[3] the Debtors request the entry of an order authorizing CBO Holding to abandon the Trust Securities to the Owner Trustees.

### IV. Basis for Requested Relief

16.     Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor-in-possession] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also In re Grossinger's Assocs.*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995). Trustees and debtors-in-possession are afforded significant discretion in determining the value and benefits of particular property for the purposes of abandonment under section 554(a). *See In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994) ("[A]bandonment is in the discretion of the trustee, bounded only by that of the court"). "Courts defer to the trustee's judgment and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion." *In re Slack*, 920 B.R. 282, 284 (Bankr. D.N.J. 2003). This right to abandon exists so that "burdensome property" can be removed and "the best interests of the estate" will be furthered. *South Chicago Disposal, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 130 B.R. 162, 166 (S.D.N.Y. 1991) (quoting *In re New York Investors Mutual Group, Inc.*, 143 F. Supp. 51, 54 (S.D.N.Y. 1956).

---

[3]     Bankruptcy Rule 6007 allows a debtor-in-possession, unless otherwise directed by the court, to proceed with a proposed abandonment by giving notice and an opportunity for a hearing. *See* Fed. R. Bankr. P. 6007(a). Although not required, the Debtors have requested authorization for abandonment via this Motion, as opposed to a notice of abandonment, to give interested parties an opportunity to avoid abandonment if they agree to bear the costs of an alternative transaction that still has the effect of abrogating CBO Holding's tax filing responsibilities.

17.     The Trust Securities have no value to the Debtors' estates or any third party because any proceeds realized from the respective Trusts are insufficient to allow distributions to holders of the Trust Securities. Moreover, the Trusts are treated as qualified REIT subsidiaries under the Internal Revenue Code, *see* I.R.C. §§ 856(i)(2), 7701(i)3)(B), and thus consolidated with CBO Holding for tax return filing purposes. *See e.g.* I.R.C. § 856(i)(1).  Consequently, CBO Holding must continue to file and report the Trusts' income and expenses on its own federal and state tax returns so long as it holds the Trust Securities. *See id.* The costs associated with having to prepare federal and up to 50 state income tax returns for future tax years as a consequence of holding the Trust Securities imposes a substantial burden on the Debtors' estates without any corresponding benefit. Accordingly, the Debtors seek authority for CBO Holding to abandon the Trust Securities before the end of the current tax year 2010.

18.     Under applicable law, it is clear that abandonment as proposed in this Motion is effective for purposes of future tax ownership with respect to the Trust Securities. The Trusts constitute taxable mortgage pools under the Internal Revenue Code, which are treated as corporations for federal income tax purposes. *See* I.R.C. §§ 7701(i)(2), 7701(i)(1).  Applicable regulations issued by the Department of the Treasury (the "Treasury Regulations") provide that corporate securities may be abandoned for federal income purposes. *See* Treas. Reg. § 1.165-5(i)(1). The Treasury Regulations provide that, as with corporate securities, CBO Holding can abandon the Owner Trust Certificates by (a) permanently surrendering and relinquishing all rights in the Trust Securities and (b) receiving no consideration in exchange for the Trust Securities. *See id.*; *see also* Rev. Rul. 93-80, 1993-2 C.B. 239; Rev. Rul. 2004-58, 2004-1 C.B. 1043 (taxpayer must (a) show an intent to abandon the asset and (b) affirmatively act to abandon the asset in a manner observable to outsiders, which cuts ties to the asset). Courts have similarly

8

held that to abandon intangible assets, such as the interests represented by the Trust Securities, a taxpayer must couple the intent to abandon with an overt act calculated to give third parties notice of the abandonment. *See Echols v. Commissioner*, 955 F.2d 703, 707 (5th Cir. 1991) (holding taxpayer's abandonment declaration at partnership meeting coupled with overt act of refusing to make further contributions was sufficient to establish abandonment of partnership interest); *Citron v. Commissioner*, 97 T.C. 200, 210-13 (1991) (holding that taxpayer's statements at partnership meeting and vote to dissolve partnership satisfied requirements for abandonment); *O'Brien v. Commissioner*, 77 T.C. 113, 115 (1981) (taxpayer abandoned partnership interest by sending a letter to the general partner stating that he abandoned all right, title and interest in the partnership).

19.     The Trust Securities are of no value to the Debtors' estates or any third party. Abandonment of the Trust Securities by year-end will relieve CBO Holding from the substantial burden of having to file federal and up to 50 state tax returns for the 2011 tax year and beyond. The Senior Lenders have consented to the abandonment of the Trust Securities subject to compliance with the RFA.  Notice of this Motion and an opportunity to be heard has been provided to the Owner Trustees, the Class A Members and other parties in interest. Accordingly, the Debtors submit that the Court has ample authority to authorize the abandonment of the Trust Securities.

## V.     Limitation of Notice

20.     Notice of this Motion has been provided to (a) the Office of the Untied States Trustee for the Southern District of New York; (b) the creditors holding the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis, as identified in the Debtors' chapter 11 petitions; (c) counsel for any official committee of unsecured creditors

appointed in these chapter 11 cases; (d) counsel for any other official committee appointed or designated in these chapter 11 cases; (e) counsel to the Administrative Agent; (f) the Internal Revenue Service; (g) the New York State Attorney General; (h) the Securities and Exchange Commission; (i) all parties that have filed a notice of appearance or have requested service in these chapter 11 cases; (j) the Class A Members; and (k) the Owner Trustees.

21.     Bankruptcy Rule 6007 provides that "[u]nless *otherwise directed by the court*, [the debtor] shall give notice of a proposed abandonment or disposition of property to the United States trustee, *all creditors*, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code." Fed R. Bankr. P. 6007 (emphasis added). Bankruptcy Rule 6007 authorizes the Court to limit the notice required for a hearing to abandon or dispose property of the estate. To give notice of this Motion to each and every creditor and interested party would impose a significant expense to the Debtors' estates. Given that the property for which the Debtors seek authority to abandon is of no value, it would be an unreasonable and unjustifiable expense for the Debtors to give notice to all creditors. Accordingly, the Debtors submit that there is ample cause to limit notice as set forth above.

## VI.     No Previous Request

22.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order, (a) authorizing CBO Holding to abandon the Trust Securities to the Owner Trustees; and (b) granting such other and further relief in favor of the Debtors as the Court may deem just and proper.

10

Dated:  New York, New York
       November 12, 2010          Respectfully submitted,

*/s/ Peter S. Partee, Sr.*
Peter S. Partee, Sr.
Jack A. Molenkamp
Andrew Kamensky (to be admitted *pro hac vice*)
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Proposed Attorneys for Debtors*
*and Debtors-in-Possession*

## SCHEDULE 1

## DESCRIPTION OF OWNER TRUST CERTIFICATES

| Name of Trust | Percentage Interest Held by C-BASS CBO Holding LLC | Owner Trustee |
|---|---|---|
| Fieldstone Mortgage Investment Trust, Series 2007-1 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2006-S 1 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2006-3 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2006-2 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2006-1 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2005-3 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2005-2 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2005-1 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2004-5 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2004-4 | 100% | U.S. Bank Trust National Association |
| Fieldstone Mortgage Investment Trust, Series 2004-3 | 100% | U.S. Bank Trust National Association |
| Aames Mortgage Investment Trust 2005-1 | 100% | Wilmington Trust Company |
| Aames Mortgage Investment Trust 2004-1 | 100% | Wilmington Trust Company |

## DESCRIPTION OF SUBORDINATED BOND

| Name of Trust | Percentage Interest Held by C-BASS CBO Holding LLC | Owner Trustee |
|---|---|---|
| Fieldstone Mortgage Investment Trust, Series 2004-3 (Class M9) | 100% | U.S. Bank Trust National Association |

# EXHIBIT 17

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CREDIT-BASED ASSET SERVICING | ) | Case No. 10-16040 (ALG) |
| AND SECURITIZATION LLC, et al., | ) |  |
|  | ) | (Jointly Administered) |
| Debtors.[1] | ) |  |

## ORDER AUTHORIZING DEBTOR C-BASS CBO HOLDING LLC TO ABANDON ITS TRUST SECURITIES

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, for the entry of an order, pursuant to section 554(a) of the Bankruptcy Code, Bankruptcy Rule 6007, and Local Rule 6007-1, authorizing Debtor C-BASS CBO Holding LLC to abandon its owner trust certificates (the "Owner Trust Certificates") and subordinated bond (the "Subordinated Bond"; together with the Owner Trust Certificates, the "Trust Securities"), purchased from certain third party mortgage investment trusts (collectively, the "Trusts"), as described on Schedule 1 to the Motion; and the Court having held a hearing (the "Hearing") on approval of the relief requested in the Motion; and the Court finding that (a) it has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated July 10, 1984 (Ward, Acting C.J.); (b) venue of these chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (d) the relief requested in the Motion is in the best interests of the Debtors, their estates, and their

---

[1]    The other Debtors are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

creditors; and (e) adequate notice of the relief requested in the Motion has been provided and no further or other notice is necessary; and the Court having determined that the factual and legal bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein,

**IT IS HEREBY ORDERED THAT:**

1.　　The Motion shall be, and hereby is, **GRANTED** as set forth herein.

2.　　Debtor C-BASS CBO Holding LLC ("<u>CBO Holding</u>") shall be, and hereby is, authorized and directed irrevocably and absolutely to abandon, relinquish and surrender all of its right, title and interest in and to each of the Trust Securities.

3.　　CBO Holding shall be, and hereby is, authorized and directed to deliver each of the original Owner Trust Certificates to the applicable Owner Trustee within five business days of the entry of this Order, said delivery for administrative purposes only.

4.　　Nothing herein shall constitute any deemed or actual transfer of title, ownership or any other interest in the Trust Securities to, impose any new or additional duty or obligation (including without limitation any duty or obligation to prepare tax returns or other tax reports) on, or diminish the contractual or other applicable rights of, (i) any of the Owner Trustees, (ii) any of the Senior Lenders, or (iii) the Administrative Agent under the Senior Credit Facility.

5.　　Consistent with its irrevocable abandonment of the Trust Securities, CBO Holding shall not be entitled to any further economic or other benefits with respect to the Trust Securities, including without limitation any future distributions with respect to the Trust Securities, and shall receive no consideration for the Trust Securities.

6.　　The Administrative Agent under the Senior Credit Facility and the Senior Lenders hereby irrevocably and absolutely release any and all liens, security interests and other encumbrances they hold on the Trust Securities as collateral security for the Senior Credit Facility.

7.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:    December 20, 2010
          New York, New York

                              __/s/ Allan L. Gropper_____
                              THE HONORABLE ALLAN L. GROPPER
                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 18

Exhibit B

## RULE 2

### REGISTRATION ON THE MERS® SYSTEM

*Section 1.* MERS, in its sole discretion, shall determine the type and level of access to the MERS® System permitted to each Member and the types of transactions that such Member may register on the MERS® System. No Member may register or attempt to register any transaction not authorized under the Rules of Membership or the Procedures.

*Section 2.* Subject to Section 1 above, each Member may register any mortgage loan on the MERS® System in accordance with the Procedures.

*Section 3.* Each Member shall promptly, or as soon as practicable, register on the MERS® System, in accordance with the Rules of Membership and the Procedures, any and all of the following transactions to which such Member is a party which involve a mortgage loan registered on the MERS® System until such time as the mortgage loan is deactivated from the MERS® System:

(a) the pledge of any mortgage loan or security interest therein and the corresponding release of such security interests;

(b) the pledge of any servicing rights or security interest therein and the corresponding release of such servicing rights or security interests;

vJune2009 8

(c) the transfer of beneficial ownership of a mortgage loan by a Member to a Member;

(d) the transfer of beneficial ownership of a mortgage loan by a non-Member to a Member;

(e) the transfer of beneficial ownership of a mortgage loan by a Member to a non-Member;

(f) the transfer of servicing rights with respect to a mortgage loan by a Member to a Member;

(g) the registration of servicing rights with respect to a mortgage loan from a non-Member to a Member;

(h) the transfer of servicing rights with respect to a mortgage loan from a Member to a non-Member (requiring deactivation);

(i) the initiation of foreclosure of any mortgage loan registered on the MERS® System;

(j) the release of a lien with respect to a mortgage loan registered on the MERS® System;

(k) the creation of a sub-servicing relationship with respect to a mortgage loan registered on the MERS® System; and

(l) any renewal, extension or modification of a mortgage loan registered on the MERS® System that involves the recording of a new security instrument and does not merely change the rate, principal balance or term.

*Section 4.*　　(a)　　The transfer to a non-Member of servicing rights with respect to a mortgage loan registered on the MERS® System shall require the deactivation of such mortgage loan from the MERS® System in accordance with these Rules and the Procedures. Upon the withdrawal or removal of a Member, all mortgage loans for which such Member acts as servicer shall be deactivated from the MERS® System, provided, however, that the mortgage loans shall remain registered with MERS if the substitute servicer is a Member and all MERS fees relating to the servicing transfer to the substitute servicer are paid. The transfer to a non-Member of a beneficial interest in a mortgage loan registered on the MERS® System shall not require the de-registration of such mortgage loan from the MERS® System unless:  (i) the servicer is a non-Member of MERS or (ii) such non-Member beneficial owner shall require deactivation.

(b)　　As long as there are no contrary instructions, when the beneficial ownership of a mortgage loan registered on the MERS® System is vested in a non-Member, MERS and Mortgage Electronic Registration Systems, Inc. shall at all times comply with the instructions of the Member shown on the MERS® System as the servicer of such mortgage loan

with respect to transactions relating to such mortgage loan.  Such Member shall indemnify and

hold harmless MERS, and any employee, director, officer or affiliate of MERS, for any and all

liability incurred as a result of compliance by MERS with instructions given by such Member on

behalf of the non-Member beneficial owner.

Section 5.    (a)    Each Member, at its own expense, shall cause Mortgage Electronic

Registration Systems, Inc., to appear in the appropriate public records as the mortgagee of record

with respect to each mortgage loan that the Member registers on the MERS® System.  Mortgage

Electronic Registration Systems, Inc. is a wholly owned subsidiary of MERS created for the

purpose of serving as the mortgagee of record in the appropriate public records.  The Member

shall monitor the public records to verify that it has complied with the preceding sentence and

shall maintain an adequate quality assurance program to ensure that its verification procedures

are effective.  The Member hereby warrants to MERS that either (i) an appropriate mortgage, or

deed of trust, or other such instrument as may be required under applicable state law, naming

Mortgage Electronic Registration Systems, Inc. as mortgagee, or (ii) an appropriate assignment

of mortgage, or assignment of deed of trust, or other such instrument as may be required under

applicable state law, naming Mortgage Electronic Registration Systems, Inc. as mortgagee, has

been or as soon as practicable shall be, properly prepared and delivered to the appropriate

recording office and the Member shall promptly register on the MERS® System the date on

which such instrument was delivered.  As soon as practicable, the Member shall register on the

MERS® System the specific recordation information provided by the custodian of public records

which evidences that Mortgage Electronic Registration Systems, Inc. is mortgagee of record with

respect to such mortgage loan. Upon the Member's becoming aware of any discrepancy between

the information shown on the MERS® System and the information in the public records, the Member shall promptly correct the information on the MERS® System.

(b) At or prior to the time a Member registers a mortgage loan on the MERS® System, such Member shall provide evidence reasonably satisfactory to MERS demonstrating that Mortgage Electronic Registration Systems, Inc. is, or as soon as practicable shall be, properly recorded as mortgagee of record in the appropriate public records with respect to such mortgage loan.

(c) Mortgage Electronic Registration Systems, Inc. shall not act as mortgagee of record for the purpose of procuring borrowers for the Member or making mortgage loans on behalf of the Member.

(d) Reference herein to "mortgage(s)" shall include deed(s) of trust, and any other form of security instrument under applicable state law. References herein to "mortgagee of record" shall include the named beneficiary under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of security instrument under applicable state law.

*Section 6.*      MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the beneficial owner, MERS and Mortgage Electronic Registration Systems, Inc. may rely on instructions from the servicer shown on the MERS® System in accordance with these Rules and the Procedures

with respect to transfers of beneficial ownership, transfers of servicing rights, and releases of security interests applicable to such mortgage loan. The beneficial owner shall give any such contrary instructions to MERS and Mortgage Electronic Registration Systems, Inc. in writing and they may rely on such instructions until receipt of further written instructions from the beneficial owner.

*Section 7.*     Each Member shall review for accuracy and completeness all information shown on the MERS® System with respect to mortgage loans and related transactions registered by such Member, and promptly update any incorrect information.

*Section 8.*     Within ten (10) business days of receiving notice from the Member servicing the loan that the mortgage loan has been paid in full, MERS shall give notice to all Members shown on the MERS® System as having interests in such mortgage loan. The Member servicing the mortgage loan shall be responsible, at its own expense, to:

(a)   take, or cause to be taken, appropriate action, including delivery to the appropriate recording office of an instrument of satisfaction or release (which may be signed by a certifying officer of Mortgage Electronic Registration Systems, Inc.), to extinguish the lien of such mortgage in the proper manner within the applicable state imposed time frames, and register on the MERS® System the date of such action, or

(b)   notify MERS that, in fact, the mortgage loan has not been paid in full. If MERS is notified that a lien release has not been executed in compliance with applicable state

imposed time frames, and the Member fails to take such action or give MERS notice that the mortgage loan has not been paid in full, then MERS reserves the right to release such mortgage. Such Member, upon demand, shall reimburse Mortgage Electronic Registration Systems, Inc. for its out-of-pocket costs in connection with release of the mortgage, including any penalties for failure to release the mortgage or take other action in a timely manner, and shall pay an administrative fee determined by Mortgage Electronic Registration Systems, Inc., and

(c)  indemnify MERS and Mortgage Electronic Registration Systems, Inc. with respect to any liability which may arise as a result of the failure of such Member to take such action or give MERS such notice in a timely and accurate manner.   Without limiting the generality of the foregoing, such indemnification shall extend to circumstances in which a mortgage is released by Mortgage Electronic Registration Systems, Inc., but the mortgage loan has not been paid in full, or in which such Member wrongfully refuses to authorize Mortgage Electronic Registration Systems, Inc. to release the mortgage.