UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re: | Chapter 7 |
|  | Case No. 10-45395-MSH |
| DAVID A MARRON and | |
| ROBIN H SOROKO-MARRON | |
| Debtors. | |

**MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM STAY**

Before me is the motion for relief from stay of HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2005-2 ("HSBC") to which David M. Nickless, the Chapter 7 trustee of the debtors' bankruptcy estate, has objected. HSBC seeks relief from the automatic stay provisions of § 362 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, to foreclose its mortgage on the debtors' home. The trustee objects, arguing that the assignment from Mortgage Electronic Registration Systems, Inc. ("MERS") by which HSBC acquired the mortgage was invalid and thus HSBC may not legally foreclose the mortgage. The trustee argues that since HSBC may not foreclose, it does not have standing to seek relief from the automatic stay. For the reasons discussed herein, I will overrule the trustee's objection and grant HSBC relief from the automatic stay.

**Factual Background**

The relevant facts of this case are not in dispute. On July 29, 2005, co-debtor Robin H. Soroko-Marron executed and delivered to MERS a mortgage on her home at 25 Mears Farm Road, Haverhill, Massachusetts. The mortgage states, among other things, that MERS "is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns" and that "MERS is the mortgagee under this Security Instrument." The mortgage defines "Lender" as

1

Fieldstone Mortgage Company ("Fieldstone").   The mortgage includes the statutory power of sale under Mass. Gen. Laws. ch 183, § 21 which is invoked by reference to the statute and which permits a mortgagee to foreclose a mortgage by public auction sale of the property upon the mortgagor's default in performance or breach of any conditions thereof.   Contemporaneously with executing the mortgage, Ms. Soroko-Marron executed a promissory note in the principal amount of $316,000 payable to Fieldstone, which was later endorsed in blank by an assistant secretary of Fieldstone.

Ms. Soroko-Marron fell behind in her mortgage payments.   According to the motion for relief, she is in default for failure to make the November 1, 2007 payment and all payments thereafter.   Eventually foreclosure proceedings were initiated.   On April 24, 2009, Marti Noriega, purporting to be an assistant vice president of MERS executed an assignment of the mortgage to HSBC.   Brenda McKinsy, a Texas notary public, took Ms. Noriega's acknowledgement.

At some point thereafter, HSBC became aware of the fact that the Ms. Soroko-Marron owned her home jointly with her husband David, the other debtor in this case.   On July 8, 2009, HSBC filed a complaint in the Massachusetts Land Court seeking to reform its mortgage to include both Mr. and Ms. Marron as mortgagors.   The parties reached a settlement by which the Marrons agreed to execute a confirmatory mortgage.   Later, the Marrons sought to repudiate the settlement.   On December 8, 2009, the Land Court entered a judgment enforcing the settlement and requiring the Marrons to give a confirmatory mortgage to MERS identical to the original mortgage but listing both spouses as mortgagors.   It also permitted HSBC's attorney to execute the confirmatory mortgage on behalf of the Marrons if they failed to do so by December 15, 2009.

2

HSBC's attorney executed the confirmatory mortgage on behalf of the Marrons on December 18, 2009. On July 9, 2010, Debra Lyman, purporting to be a vice president of MERS, executed a confirmatory assignment of mortgage, assigning the confirmatory mortgage to HSBC. Ms. Lyman's signature was notarized by Karen Quiller, another Texas notary public.

On October 29, 2010, the Marrons filed their petition for relief under Chapter 7 of the Bankruptcy Code along with a statement of their intention to surrender their Haverhill home. Subsequently HSBC filed its motion for relief from the automatic stay to which the trustee objected. After a hearing and submission of briefs I took the matter under advisement.

## Relevant Legal Framework

In order to have standing to file a motion to lift the stay in the bankruptcy court a movant must be a party in interest. *In re Maisel*, 378 B.R. 19, 2 (Bankr. D. Mass. 2007). A mortgagee armed with the power of sale is a party in interest by virtue of having a substantive right to enforce the instrument. *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011). Further, the United States Court of Appeals for the First Circuit has ruled that in determining whether a creditor has standing to seek relief from the automatic stay, a bankruptcy court need not fully adjudicate the merits of the creditor's claims but rather determine "whether a creditor has a colorable claim to property of the estate." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994). Thus if HSBC can demonstrate that is the holder of the mortgage on the debtors' property with the statutory power of sale provided by Mass. Gen. Laws ch. 183, § 21, and that it has the right to exercise that power in accordance with Mass. Gen. Laws ch. 244, § 14, then it is has a colorable claim to estate property and has standing to seek relief from stay.

## MERS

MERS is a Delaware corporation based in Virginia that along with its parent corporation, MERSCORP, Inc., was incorporated in the 1990s by several major residential mortgage lenders and investors intent on streamlining the process of transferring the ownership of mortgage loans.[1] Mortgage lenders, loan servicers, law firms and other parties involved in the residential mortgage lending business become "members" of MERSCORP by paying an annual fee and agreeing to abide by the MERSCORP Rules of Membership (the "MERS Rules").[2] *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 861 N.E.2d 81, 83 (2006).  As members, lenders agree to name MERS as mortgagee in mortgages they originate, service or own, solely as nominee for the servicer and/or owner, and their successors and assigns.  *In re Agard*, 444 B.R. 231, 248 (Bankr. E.D.N.Y. 2011). A nominee is a "person designated to act in place of another, usu[ally] in a very limited way" and a "party who holds bare legal title for the benefit of others. . . ." *Black's Law Dictionary* (9th ed. 2009).  *See In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass. 2006).  The upshot is that MERS

---

[1] *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev 1359, 1369 (2010); Kevin M. Hudspeth, *Clarifying Murky MERS: Does Mortgage Electronic Registration Systems, Inc., Have Authority to Assign the Mortgage Note in a Standard Illinois Foreclosure Action?*, 31 N. Ill. U. L. Rev. 1, 8 n. 51 (2010).

[2] The trustee filed, without objection, a portion of the MERS Rules, as an exhibit to the memorandum in support of his objection to the motion for relief from stay.  In addition to the excerpt filed by the trustee, I take judicial notice of the complete version of these rules, which is publicly available on the MERS website.  MERSCORP, Inc. Rules of Membership (June 2009), available at http://www.mersinc.org/files/filedownload.aspx?id=172&table=ProductFile (last accessed June 27, 2011).  *See In re Regan*, 2008 WL 4373001, at *8 (Bankr. D. Mass 2008) (bankruptcy court is empowered to take judicial notice of its own records); *In re Stac Elcs. Sec. Litig.*, 89 F.3d 1399, 1405 n. 4 (9th Cir.1996) (court may take judicial notice of complete copies of documents described in, but not attached to, complaint in considering a motion to dismiss).

holds legal title to the mortgage in which it is the named nominee under authority that is limited by the terms of its nominee relationship with the MERS member/nominor.

MERS maintains an electronic database that is intended to track the identities of the current servicers and owners of the mortgage loans[3] for which it serves as mortgagee/nominee, and the MERS Rules require that it may act only on behalf, and at the direction of the holders of the promissory notes or their servicers.[4]  *Agard*, 444 B.R. at 248; *Romaine*, 8 N.Y.3d at 96; MERS Rule 2, § 6.  MERS does not own any of the mortgage loans associated with the mortgages registered in its system and is not entitled to receive payments from borrowers.[5]  *See Lopez,* 446 B.R. at 18; Peterson, *supra* note 1, at 1371.

---

[3] I use the term "owners of the mortgage loans" because the MERS Rules do not describe or define with consistency the entities considered to be the beneficial owners of the mortgages in MERS' name.  At various points the MERS Rules indicate that MERS serves as nominee for the "beneficial owner," "investor" and "holder of mortgage loan promissory notes."  *See, e.g.*, MERS Rule 2, § 4(b), Rule 8, §§ 1(d) and 2(a).  This definitional disparity is not outcome determinative here, but for ease of reference, I refer to the owners of mortgage loans, which is intended to include a note holder, an entity entitled to enforce a loan despite not being a note holder, and an owner of a property interest in a promissory note who may not have the right to enforce the loan.  For an excellent discussion of these categories *see Veal v. Am. Home Mtg. Servicing, Inc.*, 2011 WL 2304200, at *7-8 (B.A.P. 9th Cir. June 10, 2011) (describing in detail how a party may be entitled to enforce a promissory note even if it is not its "holder," and how it may also own a property interest in a note, even if it is not the party entitled to enforce it).

[4] MERS Rule 2, § 6 provides that MERS acts on instructions from the note holder or its servicer, and does not refer to parties other than the note holder who either are entitled to enforce the note or who have an ownership interest in the note.  *See supra* note 3.

[5] The MERS Rules provide that while MERS never owns the promissory note and is never entitled to receive payment on the note, a MERS member may conduct a foreclosure in MERS' name, in which case MERS may be identified as the "note-holder" but only if the note is endorsed in blank and is in possession of a person authorized by MERS and the member to sign on MERS' behalf.  MERS does not, however, permit its members to plead MERS as the "note-owner" in any foreclosure document or as a co-plaintiff in a foreclosure action.  MERS Rule 8, § 2(a).

**The Dispute**

The trustee argues that because MERS was merely a nominee for Fieldstone, with limited legal authority, and because MERS never had the right to enforce the promissory note associated with the debtors' mortgage, it did not have a sufficient interest in the debtors' property to foreclose the mortgage. The trustee goes on to argue that since MERS did not have the right to foreclose, MERS could not have assigned that right to HSBC and so HSBC has no current right to foreclose either. Further, the trustee cites *Agard*, 444 B.R. at 254, in which the court found, in dicta, that MERS lacked the power to assign a mortgage absent express authority from the servicer or owner of the loan and that no such authority was granted with respect to the debtors' loan in this case. Lastly, the trustee argues that each transfer of the beneficial ownership of the mortgage on the debtors' home should have been accompanied by a written assignment, and since none existed here, there was no transfer of the beneficial (as opposed to the legal) ownership of the mortgage to HSBC. Because no chain of written assignments by the successors of Fieldstone exists, the trustee argues that MERS remains the nominee for Fieldstone, which remains the beneficial owner of the debtors' mortgage, and that Fieldstone never directed MERS to assign the mortgage to HSBC. Furthermore, Fieldstone declared bankruptcy in late 2007, and rejected its executory contract with MERSCORP, which the trustee asserts raises further questions regarding the ownership of its interest in the mortgage.

HSBC argues that it validly acquired the mortgage by assignment from MERS and that the power of sale in the mortgage permits it to foreclose. In addition, HSBC argues that the trustee's objections are barred under principles of res judicata or by the *Rooker-Feldman* doctrine, because the issue of MERS' standing was already adjudicated in the Land Court.

6

**Discussion**

The trustee's contention that a party who receives a mortgage by way of an assignment from MERS lacks the power to foreclose that mortgage has been the subject of extensive litigation across the country. No clear pattern of judicial guidance has emerged. *See*, *e.g.*, *Perry v. Nat'l Default Servicing Corp.*, 2010 WL 3325623 (N.D. Cal. Aug. 20, 2010) (MERS had authority to assign based on the language of the mortgage); *Agard*, 444 B.R. 231 (assignment from MERS was invalid without express authorization from the lender); *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009) (MERS was not a party in interest because of its status as nominee for a lender); *Jackson v. MERS*, 770 N.W.2d 487 (Minn. 2009) (unrecorded assignments of beneficial interests in a mortgage held by MERS were enforceable); *Bank of New York v. Silverberg*, 2011 WL 2279723 (N.Y. App. Div. June 7, 2011) (assignment of a mortgage from an entity that never owned the note was invalid); *U.S. Bank, N.A. v. Flynn*, 27 Misc.3d 802, 897 N.Y.S.2d 855, 858 (N.Y. Sup. Ct. 2010) (note holder with assignment of a mortgage from MERS had standing to foreclose). *See generally* Hudspeth, *supra* note 1.

In Massachusetts, however, courts have generally held that MERS may both foreclose and assign mortgages held in its name. *Aliberti v. GMAC Mortgage, LLC*, 2011 WL 1595442 (D. Mass. April 28, 2011) (assignment from MERS validly conveyed title to mortgage); *Kiah v. Aurora Loan Services, LLC*, 2011 WL 841282 (D. Mass. Mar. 4, 2011) (same); *Lopez*, 446 B.R. 12; *In re Huggins*, 357 B.R. 180 (Bankr. D. Mass. 2006) (MERS had standing to seek relief from stay as nominee for note holder); *Adamson v. MERS*, 2011 WL 1136462 (Mass. Super. Ct. Mar. 23, 2011) (foreclosure by MERS was valid even though MERS did not own the promissory note); *Lyons v. MERS*, 2011 WL 61186 (Mass. Land. Ct. Jan. 4, 2011) (same); *Randle v. GMAC Mortgage, LLC*, 2010 WL 3984714 (Mass. Land Ct. Oct. 12, 2010) (assignment from MERS was

valid); *Amtrust Bank v. T.D. Banknorth, N.A.*, 2010 WL 1019638, at *1 (Mass. Land Ct. Mar. 22, 2010) (same). *But see In re Moreno*, 2010 WL 2106208 (Bankr. D. Mass. May 24, 2010) (lender seeking relief from stay must demonstrate that MERS officer signing mortgage assignment to MERS had authority to do so with respect to the loan in question).

Under Mass. Gen. Laws. ch. 106, the Massachusetts version of the Uniform Commercial Code (the "UCC"), a person in possession of a promissory note endorsed in blank is deemed to be the holder of that note with the right to enforce it.[6] UCC §§ 3-205, 3-301. If the note is secured by a mortgage, however, the note holder may not enforce the note by foreclosing the mortgage unless it is also the mortgagee. Massachusetts, unlike many other states, does not subscribe to the theory that the mortgage "follows the note." *Barnes v. Boardman*, 149 Mass. 106, 114 (1889) ("In some jurisdictions it is held that the mere transfer of the debt without any assignment or even mention of the mortgage, carries the mortgage with it, so as to enable the assignee to assert his title in an action at law. This doctrine has not prevailed in Massachusetts . . . .") (internal citation omitted). In Massachusetts, when a mortgage and applicable note are owned by different entities, the mortgagee is deemed to hold the mortgage in trust for the owner of the note, and the note owner has the right to seek a judicial order requiring the mortgagee to assign the mortgage to it. *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 653, 941 N.E.2d 40, 54 (2011) (citing *Barnes*, 149 Mass. at 114). Unless and until the mortgage is thus assigned, however, the mortgagee retains legal title to the mortgage, albeit with a fiduciary duty to act on behalf of the owner of the note

---

[6] A party in possession of a promissory note that has been endorsed specifically to that party is also considered its holder. UCC § 1-201(20). A promissory note may also be enforced by a party in possession of the note who is not its holder but who nevertheless has the rights of a holder, or by a party without possession who satisfies the lost note provisions of UCC § 3-309. UCC § 3-301. *See also Veal*, 2011 WL 2304200, at *7-8.

which holds a beneficial interest in the mortgage. The mortgagee has a fiduciary duty as trustee to act on behalf of the note owner, but retains title to the mortgage and the right to assign the mortgage consistent with that duty. This analysis does not change just because MERS, as nominee, is the mortgagee. *See Lopez*, 446 B.R. at 18-19 ("Though MERS never held the Note, it could, by virtue of its nominee status, transfer the Mortgage on behalf of the Note holder").[7]

Furthermore, Massachusetts law does not require a unity of ownership of a mortgage and its underlying note prior to foreclosure. *Adamson*, 2011 WL 1136462, at *4. Taken to its logical conclusion, a mortgagee who is not the note holder may exercise the power of sale and foreclose the mortgage, but as a fiduciary for the note holder, to whom it must account for the foreclosure sale proceeds.

As Massachusetts law allows a mortgagee with no interest in the underlying obligation to foreclose, the trustee's argument that MERS did not have a sufficient interest in the debtors' property to foreclose the mortgage fails. Indeed, this is acknowledged explicitly in the debtors' mortgage which states

> MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: [sic] to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.

To the extent MERS held only bare legal title to the mortgage on the debtors' residence in its capacity as trustee for the note owner, MERS was able to assign its interest to HSBC.

---

[7] Ironically, the MERS phenomenon has created a national Massachusetts-like model where the legal and beneficial ownership of mortgages has been separated. Courts in states which do not permit the separation of ownership of notes and mortgages understandably find this a challenge which may account for the inconsistency in decisional authority identified above.

The fact that the debtors' promissory note passed like a hot potato down a line of owners, including some in bankruptcy and liquidation, with no accompanying assignment of the note owner's beneficial interest in the mortgage, changes nothing. Through all of these transfers right up until it finally assigned the mortgage to HSBC, MERS remained the mortgagee in its capacity as trustee and as nominee for whomever happened to own the note. Judge F. Dennis Saylor, IV of the United States District Court in Massachusetts, when presented with a similar situation, observed that

> MERS had the power to act as the agent of any valid note holder under the terms of the mortgage documents. The plain language of the mortgage states that MERS was acting as nominee for [the originator] and its "successors and assigns." [The originator's] dissolution would not prevent its successors and assigns, including [the servicer], from seeking transfer of the mortgage from MERS. Accordingly, the dissolution of [the originator] would not and could not prevent [the servicer] from obtaining an assignment of the mortgage from MERS.

*Kiah*, 2011 WL 841282, at *4.

The trustee requests that I adopt the approach taken in *Agard* and hold that a mortgage assignment from MERS is valid only if MERS can prove both its nominee relationship with whomever happens to be the current holder of the beneficial interest in the mortgage (i.e. the note owner), and that such note owner authorized MERS to assign the mortgage. By this reasoning, in our case, HSBC would have to establish MERS' authority to assign to it the debtors' mortgage by demonstrating that at the time of the assignment (i) HSBC was entitled to enforce the note and was thus the beneficial owner of the mortgage, (ii) that either HSBC or the loan servicer was a member of MERS and (iii) that the MERS officer executing the assignment was authorized to do so on behalf of MERS for this particular loan. *See Moreno*, 2010 WL 2106208, at *4-5 (initially denying a motion for relief from stay where the movant could not demonstrate the authority of the MERS officer to assign the mortgage).

As has been pointed out, however, both in *Kiah* and a subsequent decision of Judge Joseph L. Tauro of the United States District Court in Massachusetts, under Massachusetts law, an assignment of a mortgage is effective without the need to independently establish the authority of the assignor to make the assignment. *Aliberti*, 2011 WL 1595442, at *6; *Kiah,* 2011 WL 841282, at *7. Mass. Gen. Laws ch. 183, § 54B provides that an assignment of a mortgage executed before a notary public

> by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary . . . or other officer . . . including assistant to any such office or position, of the entity holding such mortgage . . , or otherwise purporting to be an authorized signatory for such entity . . . acting in its own capacity . . . shall be binding upon such entity and shall be entitled to be recorded, and no vote of the entity affirming such authority shall be required to permit recording.

Because the assignments of both the mortgage and confirmatory mortgage on the debtors' property were executed before notaries public on MERS' behalf by individuals identified as MERS assistant vice presidents, under Mass. Gen. Laws ch. 183, § 54B these assignments are binding and neither HSBC nor MERS must prove the authority of the signatories. *Aliberti*, 2011 WL 1595442, at *6; *Kiah,* 2011 WL 841282, at *7. The existence of the Massachusetts statute renders *Agard*'s analysis inapposite and the trustee's argument unavailing with respect to assignments of Massachusetts mortgages.

The trustee also asserts that nothing in the MERS Rules authorizes MERS to assign mortgages beneficially owned by its members. This assertion is disproven, however, by the rules themselves, which provide that if a beneficial owner or servicer determines that a foreclosure proceeding is to be conducted in the name of a party other than MERS, that the servicer "shall cause to be made an assignment of the mortgage from [MERS] to the person designated. . . ." MERS Rule 8, § 1(d). Therefore, in addition to MERS' authority under Massachusetts law to

11

assign mortgages in its name, the rules to which MERS members agree to be bound expressly provide for such assignments. Though the print-out submitted by HSBC reflecting HSBC as the "Investor" with respect to the debtors' loan is not dated, HSBC has a colorable claim that it was listed in the MERS system as the beneficial owner of the debtors' mortgage at the time the mortgage was assigned by MERS to HSBC in compliance with the MERS Rules.[8]

The trustee's last argument concerning the need for a chain of written assignments of the beneficial interest in the debtors' mortgage from note holder to note holder collapses under the cumulative weight of the law discussed thus far. Having a beneficial interest in a mortgage is an attribute of being a note holder or owner or the party entitled to enforce the note. Whether a party has that right is governed by UCC §§ 3-205, 3-301 and Article 9. *Veal*, 2011 WL 2304200, at *8-9. There is no requirement for a separate assignment of the note holder's beneficial interest in

---

[8] Though the term "Investor" is not defined in the MERS Rules (it is only used twice in the rules), the term appears to be synonymous with the beneficial owner of the mortgage (i.e. the person entitled to enforce the related promissory note). *Compare*

> In the event that the **beneficial owner or its designated servicer** determines that foreclosure proceedings shall be conducted in the name of a party other than [MERS], the servicer designated on the MERS® System shall cause to be made an assignment of the mortgage from [MERS] to the person designated by the beneficial owner, and such beneficial owner shall pay all recording costs in connection therewith.

MERS Rule 8, § 1(d) *with*

> If a Member chooses to conduct foreclosures in the name of [MERS], the note must be endorsed in blank and in possession of one of the Member's MERS certifying officers. If the **investor** so allows, then MERS can be designated as the note-holder.

MERS Rule 8, § 2(a) (emphasis added).

the mortgage. The Massachusetts legal doctrine where a mortgage can and often does exist on a separate plane from its underlying note reinforces this conclusion.

### Conclusion

In light of the forgoing, I find that HSBC acquired ownership of the mortgage on the debtors' property by a valid assignment from MERS, that HSBC holds the power of sale provided for in that mortgage and that HSBC is a party in interest with a colorable claim against the debtors' property which is property of the estate. I will, therefore, overrule the trustee's objection, and grant stay relief to HSBC.[9]

A separate order shall issue.

Dated: June 29, 2011                                          By the Court,

                                                              Melvin S. Hoffman
                                                              U.S. Bankruptcy Judge

Counsel Appearing:    Elizabeth A. Lonardo, Harmon Law Offices, P.C.
                      Newton Highlands, MA
                      for HSBC

                      James L. O'Connor, Nickless, Phillips and O'Connor
                      Fitchburg, MA
                      for the trustee

---

[9] Having ruled in favor of HSBC it is not necessary to address HSBC's assertion of res judicata or the *Rooker-Feldman* doctrine. I note, however, that the Land Court judgment required the debtors to execute a confirmatory mortgage on the same terms as the original mortgage. It did not address in any way whether MERS had the authority to foreclose or assign the mortgage, and did not expressly authorize MERS to execute the confirmatory assignment of the mortgage. It does not appear, therefore, that the Land Court ruling addressed the issues presented in the trustee's objection to the motion for relief from stay.