## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 10-45395-MSH |
| DAVID A MARRON and | ) |  |
| ROBIN H SOROKO-MARRON | ) |  |
|  | ) |  |
| Debtors | ) |  |
|  | ) |  |

### MEMORANDUM AND ORDER DENYING TRUSTEE'S
### MOTION FOR RECONSIDERATION

David M. Nickless, the Chapter 7 trustee of the bankruptcy estate of debtors David A. Marron and Robin H. Soroko-Marron, has moved for reconsideration of my June 29, 2011 order granting HSBC Bank USA, National Association, as Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2005-2 ("HSBC"), relief from the automatic stay.   HSBC opposes the trustee's motion.

The underlying facts are summarized in detail in a memorandum of decision accompanying the order, which concluded that HSBC, as the holder of the mortgage on the debtors' property, had a colorable claim to property of the estate, and for the reasons set forth in the memorandum, was entitled to relief from the automatic stay to foreclose its mortgage.   *In re Marron*, 2011 WL 2600543 (Bankr. D. Mass. June 29, 2011).

### Standard for Reconsideration

A motion to reconsider is governed by Fed. R. Civ. P. 60 made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.   "[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.   A party may not submit evidence that is not newly discovered in support of a motion for reconsideration."   *Harsco*

1

*Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)

(citations omitted).   A motion for reconsideration is appropriate when there has been a

significant change in the law or facts since the submission of the issue to the court; it is not a

vehicle for an unsuccessful party to rehash the same facts and same arguments previously

presented.   *Keyes v. National R.R. Passenger*, 766 F. Supp. 277, 280 (E.D. Pa. 1991).

### The Trustee's Arguments

In his motion for reconsideration, the trustee seeks clarification as to whether the order

granting HSBC relief from stay had the effect of adjudicating any substantive rights of the

parties.   He also argues that the order is predicated on three manifest errors of law: (i) the

conclusion that HSBC may foreclose its mortgage on the debtors' home without also holding the

underlying promissory note; (ii) the failure to consider the fact that the originating lender of the

mortgage loan had in its own bankruptcy rejected its executory contract with MERS prior to any

assignment of the mortgage; and (iii) the conclusion that the assignments of mortgage in this

case were valid.

### Discussion

<u>Whether Substantive Rights were Adjudicated</u>

The trustee's request for clarification as to whether the stay relief order adjudicates

substantive rights of the parties is a request for an advisory opinion.   The bankruptcy court, as a

unit of the United States District Court, does not issue advisory opinions.   *In re NSCO, Inc.*, 427

B.R. 165, 176 (Bankr. D. Mass. 2010).

<u>HSBC's Right to Foreclose Without Holding the Note</u>

The trustee takes issue with my ruling that Massachusetts law permits a mortgagee to

foreclose its mortgage even if it is not entitled to enforce the underlying promissory note.   He

2

relies on a recent ruling of the Massachusetts Superior Court that under Massachusetts law "one

must hold both the mortgage and the mortgage note before initiating foreclosure."    *Eaton v. Fed.*

*Nat. Mort. Ass'n,* slip op., C. A. 11-1382, at 4 (Mass. Super. Ct. June 17, 2011).    In *Eaton*, after

acknowledging the by now well-known legal principle recently reaffirmed by the Massachusetts

Supreme Judicial Court in *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 653 (2011), that

under Massachusetts law a promissory note and the mortgage securing the obligation under that

note do not need to be held by the same party, the Superior Court concluded that even if the note

and mortgage have been separated, "the two instruments must be re-united in order to effectively

foreclose the mortgagor's right to redeem the property."    *Eaton*, at 4.    The *Eaton* court based

its conclusion on two decisions of the Supreme Judicial Court, *Wolcott v. Winchester*, 81 Mass.

461, 465 (1860), which states that "the possession of the debt [is] essential to an effective

mortgage . . . without it [one cannot] maintain an action to foreclose the mortgage" and *Crowley

v. Adams*, 226 Mass. 582, 585 (1917), which holds that "possession of the note [is] essential to

an enforceable mortgage without which [no] mortgage could be effectively foreclosed."

I decline to adopt the reasoning of *Eaton*.    *Wolcott* and *Crowley*, which underpin the

Superior Court's ruling are, I believe, inapposite.    In both Supreme Judicial Court cases the

loans had been paid in full before the litigation began.    Since a mortgage secures the obligation

to pay a debt, once the debt had been paid off, the Supreme Judicial Court concluded that a

mortgagee had no right to foreclose.    The reliance in *Wolcott* and *Crowley* on the need for

possession of the debt or note as a condition to foreclosure was not in the context of whether the

mortgagee held the right to enforce the obligation, but whether anyone did.    As the *Crowley*

Court noted, "[i]t is plain however, that if at the date of [the assignment of the mortgage] the

3

debts secured had been paid as the judge found, there was no default or breach of condition and under such circumstances the foreclosure in each instance whether by entry or sale under the power did not pass good title to the purchaser." *Crowley*, 226 Mass. at 242.   The fact that the debt had been paid is what led the SJC to conclude that the assignee "should be held to have known . . . that possession of the note was essential to an enforceable mortgage." *Id.*   In this case the indebtedness underlying the mortgage on the debtors' home remains outstanding.   Thus upon default, HSBC as assignee of the mortgage was entitled to foreclose even without possession of the note.   *See Saxon Mortg. Servs, Inc. v. Arazi*, Misc. Case No. 10 MISC 442037, Order dated Jul. 12, 2011 (Mass. Land Ct.) (Piper, J.) (citing *In re Marron* as a "correct statement of Massachusetts law").

<u>Fieldstone's Rejection of its Executory Contracts</u>

The trustee claims that I failed to consider the fact that Fieldstone Mortgage Company, the originator of the debtors' mortgage loan, had rejected its contract with MERSCORP, Inc., the parent of MERS, in the course of its bankruptcy filed on November 23, 2007.   I noted this fact, however, in my memorandum of decision and concluded that "[t]he fact that the debtors' promissory note passed like a hot potato down a line of owners, including some in bankruptcy and liquidation, with no accompanying assignment of the note owner's beneficial interest in the mortgage, changes nothing."   *Marron*, 2011 WL 2600543, at *5.

Mass. Gen. Laws ch. 183, § 54B provides that

Notwithstanding any law to the contrary, (1) a discharge of mortgage; (2) a release, partial release or assignment of mortgage . . . if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including

4

assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity and shall be entitled to be recorded, and no vote of the entity affirming such authority shall be required to permit recording.

*Id.*   The statute is clear, therefore, that an assignment of a mortgage executed before a notary public by one purporting to be an officer of a corporate mortgagee is binding as against the assigning mortgagee.   The statute vitiates the trustee's argument that if Fieldstone continued to hold the promissory note underlying the mortgage after it had rejected its MERSCORP agreement then Fieldstone would not have been able to direct MERS to assign the mortgage to HSBC.[1]   Under Mass. Gen. Laws ch. 183, § 54B, the assignments would be binding upon MERS in any event.[2]

The Validity of the Mortgage Assignments

The trustee argues that Mass. Gen. Laws ch. 183, § 54B is merely a recording statute, and thus it was error to apply the statute to establish the prima facie validity of the mortgage

---

[1]  The trustee appears to assume that Fieldstone's rejection of its MERS contract had the effect of terminating the agreement.   Rejection of a contract under 11 U.S.C. § 365(g), however, has the same effect as the breach of that contract, but does not "cause a contract magically to vanish." *Sir Speedy, Inc. v. Morse*, 256 B.R. 657, 659 (D. Mass. 2000).   Without evidence that Fieldstone's MERSCORP agreement was actually terminated, the trustee cannot assert that Fieldstone was no longer a MERS member at the time the mortgage on the debtor's home was first assigned from MERS to HSBC.

[2]  The full name of the trust for which HSBC claims to hold the mortgage on the debtors' property is the Fieldstone Mortgage Investment Trust, Series 2005-2.   Assuming that this trust is similar to other trusts holding pools of mortgage loans for the purpose of creating mortgage-backed securities, and assuming that the debtors' loan was transferred to the trust in accordance with the relevant securitization agreements, then it is probable that the debtors' mortgage loan was transferred to the trust around the time the trust was created, which was likely in 2005.   If so, then Fieldstone would not have been the note holder at the time it filed bankruptcy in 2007, and the trustee's argument would be moot.   Though this is a plausible chain of events, no evidence has been presented to support it in the context of the motion for relief from stay and so I do not rely on it for my ruling.

assignments.   The trustee reads the statute too narrowly.   It provides that a conforming

assignment "*shall be binding* upon [the assignor]."   *Id*. (emphasis added).   Though there

appear to be no cases interpreting § 54B, its plain language establishes that the assignments in

this case are binding upon MERS whether or not MERS or its signing officer had the authority to

execute them.

Though he failed to raise the issue in his original objection to HSBC's motion for relief

from stay, the trustee argues at length in his motion for reconsideration that the assignments of

the mortgage on the debtors' home were not properly acknowledged because the notaries who

took the acknowledgments of the people who executed them did not provide a certificate of the

notaries' authority to take acknowledgements, as is sometimes required by Mass. Gen. Laws ch.

183, § 30.   The trustee does not, however, explain the consequence of this purported defect in

the acknowledgment.   Even assuming, however, that it would be appropriate to consider this

argument when it was not made in the original objection, the trustee nevertheless fails to

establish any defect in the assignments of mortgage that could render them invalid or ineligible

for recording.

The trustee cites Mass. Gen. Laws ch. 183, § 30(b), which provides that if a deed or other

instrument is acknowledged in a state other than Massachusetts the acknowledgment may be

taken by "a justice of the peace, notary public, magistrate or commissioner appointed therefor by

the governor of this commonwealth, or, if a certificate of authority in the form prescribed by

section thirty-three is attached thereto, before any other officer therein authorized to take

acknowledgments of deeds."   This statute clearly establishes that a notary public of another

state may take an acknowledgment without attaching a certificate of his or her authority to do so.

If, however, the acknowledgement is taken by an officer other than one listed in the statute, then the officer must attach a certificate of his authority to take acknowledgements to the instrument being acknowledged.

In this case, the assignments of the mortgage on the debtors' home were acknowledged before notaries public in Texas, so § 30(b) does not require a certificate of authority to be attached to the assignments.

The trustee argues that § 30(b) must be read in conjunction with § 41.    Section 41 provides that

> [t]he **proof** of a deed or other instrument, if made without the commonwealth in some state, territory, district or dependency of the United States, may be made before any of the persons enumerated in clause (b) of section thirty; **provided, however, that a certificate of authority as provided in section thirty-three shall be attached thereto**; if without the United States or any dependency thereof, such proof may be made before any of the persons enumerated in clause (c) of said section thirty.

Mass. Gen. Laws ch. 183, § 41 (emphasis added).    This section establishes that an out-of-state notary is required to provide a certificate of authority when taking the proof of a deed or other instrument.    Proof of a deed or instrument is entirely different than an acknowledgment. Section 29 establishes that a deed may not be recorded unless it is accompanied by *either* a certificate of its acknowledgment *or* proof of its due execution.    Section 30 establishes the requirements for the acknowledgment of an instrument, while § 41 establishes how the proof of an instrument's due execution may be taken outside Massachusetts.    By conflating the requirements for taking acknowledgments with those of proofs of due execution, the trustee renders § 30(b) meaningless.    The assignments of mortgage in this case were acknowledged, and not proven, so the applicable statutory provision is § 30(b), which does not require a certificate of authority.    *See Ashkenazy v. R.M. Bradley & Co.*, 328 Mass. 242, 246-47 (1952)

7

(holding that the discharge of a mortgage where the acknowledgement was taken by an out-of-state notary public who affixes his notarial seal does not need to be accompanied by a certificate of authority).   As no certificate of authority was required, the trustee fails to establish any defect in the assignments of mortgage that could render them either invalid or ineligible for recording.

Furthermore, none of the statutory provisions cited by the trustee is even applicable to assignments of mortgage.   Mass. Gen. Laws ch. 183, §§ 29-42 concern deeds and certain other instruments that require acknowledgment or proof of due execution to be recorded.   The validity and recordation of assignments of mortgage, however, is governed by § 54B, which is prefaced with the phrase "Notwithstanding any law to the contrary."   This indicates the Legislature's intent that § 54B preempts ch. 183, §§ 29-42 as the exclusive provision establishing the criteria for binding and recordable assignments of mortgage wherever executed.   As the assignments of the mortgage were made in compliance with § 54B, they are both valid and recordable, regardless of whether they complied with § 30(b) as described here.

In his objection to HSBC's motion for relief from stay, the trustee noted that the attorneys general of every state are investigating certain lenders' use of faulty and potentially fraudulent documentation in residential mortgage foreclosures.   The trustee indicated his intent to investigate whether similar abuses in connection with the securitization of the debtors' mortgage loan may provide the bankruptcy estate with a "superior interest in the Debtors' residence to HSBC due to fraudulent or otherwise erroneous breakdowns in the securitization process concerning the Debtors' mortgage."   Apart from the issue of whether a bankruptcy trustee should view himself as a private attorney general, a motion for relief from stay is certainly not

8

the context for the trustee to investigate and litigate the abuses he suspects may exist with respect

to the debtors' loan.   *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 34 (1st Cir. 1994)

(holding that a bankruptcy court's decision whether to grant relief from the automatic stay is not

"an adjudication of the validity or avoidability of the claim, but only a determination that the

creditor's claim is sufficiently plausible to allow its prosecution elsewhere.").   It is clear that

HSBC, as the assignee of the mortgage on the debtors' property, has a colorable claim against

property of the estate, and was thus entitled to relief from stay.

**Conclusion**

For the reasons discussed above, the trustee's motion for reconsideration of the June 29,

2011 order granting HSBC relief from the automatic stay is DENIED.

At Worcester, Massachusetts this 29th day of August, 2011.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   A. Rebecca Murray and Kathryn A. Fyans
Harmon Law Offices, P.C.
Newton Highlands, MA
for HSBC

James L. O'Connor
Nickless, Phillips and O'Connor
Fitchburg, MA
for the trustee